In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 06-3240 & 06-3879

SYED IQBAL ALI,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

---

Petitions for Review of Orders of
the Board of Immigration Appeals.
No. A95-925-079

---

ARGUED FEBRUARY 22, 2007—DECIDED SEPTEMBER 14, 2007

---

Before BAUER, EVANS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Syed Ali petitions for review of decisions of the Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ") denial of his request for a continuance and denying his subsequent motion for reconsideration. Ali sought to continue his removal hearing to await a disposition on his son Zeeshan's application for American citizenship; once naturalized, Zeeshan could sponsor Ali's petition to adjust his status to that of a lawful permanent resident. Ali now argues, as he did before the BIA, that the IJ failed to provide an adequate reason for denying the continuance. He also contends that the National Security Entry-Exit Registration System ("NSEERS") program,

through which his illegal presence in the United States was brought to the attention of the immigration authorities in the first place, unconstitutionally targets aliens from Arab and Muslim countries.

This circuit has previously assumed, without deciding, that the jurisdiction-stripping provision of § 242(a)(2)(B)(ii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a)(2)(B)(ii), generally precludes judicial review of continuance decisions of immigration judges. *Subhan v. Ashcroft*, 383 F.3d 591, 595 (7th Cir. 2004). The Attorney General now argues, in a change of position, that § 1252(a)(2)(B)(ii) does *not* apply to denials of continuances. We note the concession but disagree.

Section 1252(a)(2)(B)(ii) provides (with an exception not relevant here) that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General . . . the *authority* for which is *specified under this subchapter* to be in the discretion of the Attorney General." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). The Attorney General's current view is that this provision is inapplicable to continuance decisions because an immigration judge's authority to grant continuances is conferred by regulation, not statute. While it is true that continuances are specifically mentioned only in the administrative regulations, *see* 8 C.F.R. § 1003.29, an immigration judge's *authority* to grant or deny a continuance is statutory; it derives from 8 U.S.C. § 1229a, which confers upon immigration judges the plenary authority to conduct removal proceedings. The regulation regarding continuances simply implements the immigration judge's statutory authority to control the course of removal proceedings.

Accordingly, as suggested but not decided in *Subhan*, an immigration judge's denial of a continuance motion is a discretionary "decision or action" the "authority for which"

is committed to the immigration judge by the relevant subchapter of the INA, and the jurisdictional bar in § 1252(a)(2)(B)(ii) generally precludes judicial review. Although this is the minority position among the circuits that have considered the question, we think it the sound one and now adopt it.[1] This position is consistent with our recent decision in *Leguizamo-Medina v. Gonzales*, 493 F.3d 772, 775 (7th Cir. 2007), which interpreted the preceding subsection of the jurisdiction-stripping statute, § 1252(a)(2)(B)(i). *Leguizamo-Medina* held that where § 1252(a)(2)(B)(i) removes jurisdiction to review a final immigration decision (the statute eliminates judicial review of agency decisions regarding certain forms of immigration relief), review of continuance denials and other interim orders leading up to the final decision is also precluded.

Here, Ali conceded removability but sought a continuance so he could pursue adjustment of status if his son's application for citizenship was approved. He now seeks review of the denial of the continuance, but our review is barred by both § 1252(a)(2)(B)(ii) and the logic of *Leguizamo-Medina*. Adjustment of status determinations are unreviewable under § 1252(a)(2)(B)(i); the IJ's continuance decision is interim to Ali's contemplated adjustment of status application, and interim orders entered along the road to an unreviewable final order are themselves unreviewable.

---

[1] This opinion has been circulated among all judges of this court in regular active service pursuant to Circuit Rule 40(e). A majority did not favor rehearing en banc on the question of whether the jurisdiction-stripping provision, 8 U.S.C. § 1252(a)(2)(B)(ii), applies to continuance decisions of immigration judges. Judges Ripple, Rovner, Wood, and Williams voted to rehear this case en banc.

We also hold that Ali's case does not fall within the exception to the jurisdictional bar recognized in *Subhan*. Finally, we lack jurisdiction to consider Ali's constitutional challenge to the NSEERS program.

## I.  Background

Ali, a citizen of Pakistan, entered the United States in 1996 on a six-month visitor's visa. He overstayed his visa and in 2003 was placed in removal proceedings. After a preliminary hearing in April 2003, his case was continued, and at the next hearing in November, Ali conceded removability. Through counsel, he told the IJ that his son Zeeshan had a pending application for citizenship and that once he was naturalized, Zeeshan intended to file a family-based visa petition (I-130) on Ali's behalf. Ali also informed the IJ that although he missed the one-year deadline for seeking asylum, he intended to apply for withholding of removal and relief under the Convention Against Torture. (He apparently never did apply for these forms of relief.) The IJ continued the hearing twice more, until February 2005.

Meanwhile, Zeeshan—who had not yet been granted citizenship—filed an I-130 petition on Ali's behalf. Zeeshan, a permanent resident, represented that he was sponsoring Ali as a "parent of U.S. citizen." Ali moved to have his removal case continued again, or administratively closed, to await a decision on Zeeshan's citizenship application. The government opposed the motion.

At the February 2005 hearing, Ali argued that his son's naturalization application was still pending and that it would be unjust to "tear a father from his son" if Ali could adjust his status once Zeeshan became a citizen. To support his request for a continuance, Ali offered into evidence a "walk-in form" that Zeeshan had submitted to

the office of United States Senator Richard Durbin requesting intervention in his citizenship application. On that form Zeeshan stated his interview and citizenship test had been held in January 2004, and his application for citizenship had been denied on the ground of "poor moral character."

Without mentioning this form—evidence submitted by Ali establishing that Zeeshan's naturalization application had already been *denied*—the IJ concluded that Ali had not established the requisite "good cause" for a continuance. 8 C.F.R. § 1003.29. The IJ explained that Ali was not immediately eligible for a visa, that a long continuance had already been granted based on Ali's representation that his son's application would be decided soon, and that "everyone who appears before me has family ties in the United States." The IJ denied the continuance and granted relief in the form of voluntary departure.

Ali appealed the IJ's decision to the BIA, arguing that the denial of a continuance was erroneous under *In re Velarde-Pacheco*, 23 I. & N. Dec. 253 (BIA 2002), and *Subhan*, 383 F.3d at 593-94. In *Velarde-Pacheco*, the BIA determined that a properly filed motion to reopen for adjustment of status based on a marriage-based visa petition may be granted in the exercise of discretion as long as certain criteria are met. 23 I. & N. Dec. at 256. In *Subhan*, this court held that an IJ had erred by arbitrarily denying a continuance to an alien seeking to adjust his status based on an employment certification, the application for which was awaiting action by the state and federal labor departments. 383 F.3d at 595. The BIA rejected Ali's argument that his case was analogous to either *Subhan* or *Velarde-Pacheco* and concluded that the IJ had given adequate reasons for denying the continuance. In addition, the BIA held that the continuance was properly denied based on the evidence Ali submitted indicating that Zeeshan's citizenship application had already been denied due to poor moral character.

Ali moved for reconsideration. The BIA denied the motion because Ali merely reiterated the arguments he made on appeal rather than citing any legal or factual omission or defect in the BIA's decision.[2] Ali now petitions for review.

## II. Discussion

Ali contends the IJ improperly denied a continuance simply because no visa was immediately available for him, a flaw in reasoning that led to our granting the petition for review in *Subhan*, which he argues is indistinguishable from his case. He also faults the BIA for relying on the apparent denial of his son's citizenship application, which he asserts is still pending and which was not (he now claims) the only basis for adjusting his status. Ali asserts that Zeeshan's permanent resident status provides an alternate ground to adjust status. Finally, Ali challenges the constitutionality of the NSEERS program that brought him to the attention of the Department of Homeland Security ("DHS") and led to the commencement of removal proceedings against him.

Before reaching the merits of Ali's arguments, we must first consider our jurisdiction to review a denial of a continuance in a removal proceeding. In *Subhan*, we assumed jurisdiction to review continuance decisions was lacking by virtue of the jurisdiction-stripping provision of § 1252(a)(2)(B)(ii). But we sidestepped an ultimate decision on the question, reasoning that if the denial of a continuance effectively nullified the statutory opportu-

---

[2] Although we are dismissing the petitions for review for lack of jurisdiction, we note that the BIA's reason for denying reconsideration is consistent with *Rehman v. Gonzales*, 441 F.3d 506, 508 (7th Cir. 2006).

nity to adjust status, *see* 8 U.S.C. § 1255, the IJ must provide a reason for the denial consistent with § 1255, not just a statement of the procedural posture of the case. 383 F.3d at 593-94. The IJ in *Subhan* had denied a continuance simply because the alien's labor certification had not yet been processed, which we viewed as "merely a statement of the obvious," not a *reason*. *Id.* at 593.

While the Attorney General has argued in other cases that we lack jurisdiction to review continuance denials (and also has sought to distinguish or limit *Subhan*), in this case and others more recently, he "declined to assert" the jurisdictional bar. We have noted the impropriety of this position; "jurisdiction always comes ahead of the merits." *Leguizamo-Medina*, 493 F.3d at 774. When questioned about jurisdiction at oral argument, the agency's attorney informed us that the Department of Justice now takes the position that the jurisdiction-stripping provision, § 1252(a)(2)(B)(ii), does not apply to continuance decisions. We asked for supplemental briefing on the matter. We have carefully considered the Department's changed position and find ourselves unable to agree with it.

The jurisdiction-stripping provision at issue here precludes judicial review of immigration decisions "the *authority* for which is *specified under this subchapter* to be in the discretion of the Attorney General." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). By its terms, this statute removes jurisdiction to review only those decisions the authority for which is committed to the discretion of the Attorney General by 8 U.S.C. §§ 1151-1381 (the statutes comprising subchapter II of Chapter 12 of the INA). The Attorney General now argues that because continuances are referenced only in the immigration regulations, not the statutes, the discretionary authority to grant or deny a continuance is not "specified under this subchapter" within the meaning of

§ 1252(a)(2)(B)(ii), and the jurisdictional bar therefore does not apply.

It is true that the relevant subchapter of the INA is silent on the subject of continuances. As we noted in *Subhan*, 383 F.3d at 595, continuances are mentioned in the implementing administrative regulations, at 8 C.F.R. §§ 1003.29; this regulation provides that an immigration judge "may grant a motion for continuance for good cause shown." But an immigration judge's *authority* to grant or deny a continuance derives not from the regulation but from a statute, 8 U.S.C. § 1229a, and this statute *is* part of the relevant subchapter of the INA. Section 1229a(a)(1) confers on immigration judges the plenary authority to conduct removal proceedings; § 1229a(b)(1) describes that authority in general terms (it provides, for example, that the immigration judge has the authority to "administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses" and "issue subpoenas"). The regulation pertaining to continuances implements these statutes, but the immigration judge's *authority* to conduct and control the course of removal proceedings is "specified in" subchapter II of the INA, and this necessarily encompasses the discretion to continue the proceedings, whether on the motion of a party or sua sponte. The jurisdictional bar therefore applies to continuance decisions.

We suggested this interpretation in *Subhan* but did not affirmatively adopt it. 383 F.3d at 595 (noting that § 1229a authorizes immigration judges to conduct removal proceedings and observing that "since orders denying motions for continuances, like other orders governing the management of trials, are traditionally and indeed inevitably discretionary in character[,] . . . it is apparent that section 1252(a)(2)(B)(ii) withdraws from the courts the power to review such rulings when made by an immigration judge"). We now do so. There is a circuit

split on this question, and we recognize that we are aligning ourselves with the minority view. The Eighth and Tenth Circuits have adopted the same interpretation as we do here. *See Yerkovich v. Ashcroft*, 381 F.3d 990, 993-95 (10th Cir. 2004); *Onyinkwa v. Ashcroft*, 376 F.3d 797, 799 (8th Cir. 2004). The First, Second, Third, Fifth, Sixth, and Eleventh Circuits have accepted the interpretation now asserted by the Attorney General. *See Alsamhouri v. Gonzales*, 484 F.3d 117, 122 (1st Cir. 2007); *Zafar v. Att'y Gen.*, 461 F.3d 1357, 1360-62 (11th Cir. 2006); *Khan v. Att'y Gen.*, 448 F.3d 226, 232-33 (3d Cir. 2006); *Ahmed v. Gonzales*, 447 F.3d 433, 436-37 (5th Cir. 2006); *Sanusi v. Gonzales*, 445 F.3d 193, 198-99 (2d Cir. 2006); *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 633-34 (6th Cir. 2006). The majority position, however, cannot be reconciled with our recent opinion in *Leguizamo-Medina.*

The alien in *Leguizamo-Medina* had sought a continuance in order to present more testimony on her claim for cancellation of removal. Her motion was denied and she petitioned for judicial review. The jurisdictional bar at issue in *Leguizamo-Medina* was § 1252(a)(2)(B)(i), the subsection preceding the statute at issue here. Section 1252(a)(2)(B)(i) eliminates judicial review of "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title." The listed statutes pertain to the Attorney General's authority to make decisions regarding waiver of inadmissibility, cancellation of removal, voluntary departure, and adjustment of status. Because § 1252(a)(2)(B)(i) "puts the [cancellation of removal] decision beyond review," we held that the statute also "insulates the choices leading up to that decision," including the continuance decision. *Leguizamo-Medina*, 493 F.3d at 775. "When a decision is unreviewable, any opinion one way or the other on the propriety of the steps that led to that decision would be an advisory opinion." *Id.* (citing *Powerex Corp. v. Reliant*

*Energy Servs., Inc.*, 127 S. Ct. 2411, 2419 (2007); *Daniels v. Liberty Mut. Ins. Co.*, 484 F.3d 884, 887-88 (7th Cir. 2007)).

Here, Ali sought a continuance in order to pursue adjustment of status if his son naturalized. Of course we are not reviewing a final decision denying adjustment of status (the case never got that far), but Ali's continuance motion was ancillary to his contemplated petition to adjust status—that is, it was a procedural step along the way to an unreviewable final decision—and the denial of the motion is therefore unreviewable.[3]

This leaves us to consider whether Ali's case falls within the exception noted in *Subhan*. It does not. The BIA affirmed the IJ's denial of a continuance based on evidence in the record indicating that Zeeshan's citizenship application had already been denied; this is a reason consistent with the adjustment statute, not merely a "statement of the obvious." The "walk-in" form Zeeshan submitted to Senator Durbin's office stated that he had been denied citizenship "on poor moral character." The BIA was entitled to rely on this evidence—which was introduced, after all, by Ali himself.

---

[3] Final orders of removal such as the one before us are generally reviewable pursuant to 8 U.S.C. § 1252(a)(1), but this general review authority is subject to the jurisdiction-stripping provisions in subsection (a)(2) of that statute, two of which we have been discussing here. The prefatory language in § 1252(a)(2)(B) states, in pertinent part: "Notwithstanding any other provision of law (statutory or nonstatutory) . . . and *regardless of whether the judgment, decision, or action is made in removal proceedings*, no court shall have jurisdiction to review . . . ." (emphasis added). Subsections (i) and (ii), under consideration here, immediately follow this language. We note also that Ali conceded removability; his petition for review challenges only the denial of his continuance motion and the constitutionality of the NSEERS program.

Ali protests, however, that Zeeshan's citizenship application remains viable, despite the contrary written evidence he submitted to the IJ. At oral argument, Ali's counsel confirmed that Zeeshan's first application indeed was denied on moral character grounds.[4] Counsel represented, however, that Zeeshan was able to reapply within five years and has done so. At the time of oral argument, no action had been taken on the second application. Ali's counsel also told us that all three of Ali's sons have pending citizenship applications. And after oral argument Ali's attorney sent us a copy of a Notice of Action on the citizenship application for Haris Ali, one of Ali's sons, scheduling an appointment for March 23, 2007. This form was unaccompanied by any explanation as to its significance for the case before us, although we assume that Ali would like to try to adjust his status based on Haris's citizenship if it is granted.

These developments are beside the point, however. At the time the BIA reviewed the denial of the continuance, the only record evidence concerning Zeeshan's citizenship application indicated that it was denied. To the best of the BIA's knowledge, it would have been futile to grant a continuance. *See Pede v. Gonzales*, 442 F.3d 570, 571 (7th Cir. 2006) (holding that "ultimate hopelessness" of application for adjustment of status is "perfectly acceptable basis" for denying continuance). Because the denial of a continuance did not have the effect of nullifying the

---

[4] The Attorney General, however, represented that Zeeshan's application was dismissed for lack of prosecution after he failed to file documents pertaining to his criminal history (which, according the Attorney General, includes more than one criminal charge). Also, Zeeshan failed to prosecute the administrative appeal of the denial of his citizenship application, and the appeal was dismissed.

statutory opportunity to adjust status, the *Subhan* exception to the jurisdictional bar does not apply.[5]

Finally, Ali raises a constitutional challenge to the NSEERS program that caused him to come to the attention of the DHS. Ali contends that he was unconstitutionally targeted for registration and removal based on his religion and ethnicity. But we have held that under 8 U.S.C. § 1252(g), we lack jurisdiction to review a challenge to the constitutionality of the NSEERS program. *See Hadayat v. Gonzales*, 458 F.3d 659, 665 (7th Cir. 2006). Section 1252(g) bars federal courts from hearing claims "by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings." Accordingly, selective prosecution claims by aliens are largely barred. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 491 (1999); *Hadayat*, 458 F.3d at 665; *Ahmed*, 447 F.3d at 439-40. Although a narrow exception remains for certain "outrageous" cases, *see Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 491, Ali's bare allegations of discrimination are insufficient to invoke that exception. *See Hadayat*, 458 F.3d at 665.

For the foregoing reasons, Ali's petitions for review are DISMISSED for lack of jurisdiction.

---

[5] Insofar as Ali contends that he could also adjust his status because Zeeshan (and apparently his other sons) had a green card, he is simply incorrect. A legal permanent resident may sponsor a spouse or an unmarried child but not a parent. *See* 8 U.S.C. § 1153(a)(2).

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*