# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-2550

LOLITA WOOD a/k/a LOLITA BENDIKIENE,

*Petitioner,*

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A95-398-538

ARGUED MARCH 28, 2007—DECIDED FEBRUARY 14, 2008

Before POSNER, ROVNER, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Lolita Wood, a native and citizen of Lithuania who overstayed her visitor's visa, married a U.S. citizen during the final stages of her removal proceedings. In a last-ditch effort to stave off removal to her native country, she requested a continuance to apply for adjustment of status as the spouse of a U.S. citizen. An immigration judge ("IJ") denied her request because Wood had already received a 14-month continuance by presenting herself as the "wife" of her asylum-seeking Lithuanian ex-husband at an earlier removal hearing. Wood appealed the IJ's ruling to the Board of Immigration

Appeals ("BIA"), which adopted and affirmed the IJ's decision. Based on the same conduct cited by the IJ as grounds for denying the continuance, the BIA also determined that Wood did not merit a discretionary adjustment of status. The BIA ordered Wood to voluntarily depart the United States.

On petition for review to this court, Wood challenges the BIA's denial of a continuance and its determination that she did not warrant a discretionary adjustment of status. We have no jurisdiction to review either determination. *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *Ali v. Gonzales*, 502 F.3d 659, 664 (7th Cir. 2007). Wood also argues the BIA exceeded its appellate-review authority by reaching and deciding the ultimate adjustment-of-status question, even though the IJ had not. This is a legal issue over which our review jurisdiction remains intact, 8 U.S.C. § 1252(a)(2)(D); *Ali v. Achim*, 468 F.3d 462, 465 (7th Cir. 2006), but we reject Wood's argument. The BIA properly exercised its appellate-review authority over discretionary issues when it determined Wood did not merit a status adjustment. The petition for review is denied.

## I.  Background

Lolita Wood overstayed a visitor's visa that expired in October 2000. Daries Bendikas, Lolita's Lithuanian husband at the time she entered the United States, also overstayed his visa, and in February 2002 he submitted an asylum application naming his wife as a derivative beneficiary. A few months later, however, Wood was no longer married to Bendikas; in May 2002 a Lithuanian court in Vilnius granted her divorce petition. Unaware of the divorce, the Immigration and Naturalization Service (which merged into the Department of Homeland Security as the U.S. Citizenship and Immigration Services in March 2003) denied Bendikas's asylum application and

referred the couple to immigration court for removal proceedings.

In January 2003 the couple appeared pro se before an IJ for their initial hearing. The IJ assumed the couple was still married; they appeared as husband and wife, and neither told the IJ about their divorce. Rather, Bendikas told the IJ he wished to challenge the denial of his asylum application, which still listed Wood as a derivative beneficiary by virtue of their marriage. To give the couple time to obtain counsel and prepare their asylum case, the IJ granted Bendikas and Wood a 14-month continuance and scheduled their final asylum and removal hearing for April 2004.

Wood appeared with counsel at the April 2004 hearing, but Bendikas did not appear at all. By this time the IJ had learned of the couple's May 2002 divorce and informed Wood that she was ineligible for asylum because she was no longer married to the primary asylum applicant. The IJ explained that the only type of relief available to Wood was voluntary departure, which he would determine in his discretion. Wood's attorney then told the IJ that Wood planned to marry a U.S. citizen in July 2004, but the IJ was reluctant to prolong the proceedings to accommodate any future marriage-based challenges to removal—namely, an application to adjust status to that of a lawful permanent resident. The IJ noted that Wood's contemplated marriage might make her eligible for admission as a lawful permanent resident in the future, but she would need to apply through the U.S. Embassy in Lithuania, not in the context of her removal proceedings.[1] The

---

[1] Only aliens physically present in the United States may apply for adjustment of status based on marriage to a U.S. citizen. 8 C.F.R. § 245.1 (2006). As such, by ordering voluntary depar-
(continued...)

IJ then granted a continuance until December 2004 so that Wood's attorney, whom she had retained only the night before, could explain to Wood the implications of voluntary departure and investigate any other possible forms of relief. The IJ made it clear there would be no more continuances—even one based on Wood's contemplated marriage and any resulting visa petition by her American husband—and instructed Wood's attorney to "advise your client that she is going to either be willing to depart voluntarily at the next hearing . . . or I am simply going to enter an order that she be deported." On July 23, 2004, Wood married U.S. citizen Timothy Wood, who promptly filed an I-130 immigrant relative visa petition on her behalf.

---

[1] (...continued)
ture, the IJ in Wood's case would require her to pursue lawful permanent residency from abroad. As the IJ noted, once abroad, an alien married to a U.S. citizen must seek an immigrant visa for admission as a lawful permanent resident through a consular office of the U.S. Department of State. 8 C.F.R. § 211.1; 22 C.F.R. §§ 42.21(a), 42.61(a). What the IJ failed to mention, however, was that an alien ordered to voluntarily depart the country as a result of a visa overstay is inadmissible for three or ten years depending on the length of the overstay. 8 U.S.C. § 1182(a)(9)(B)(i) (2000). The period of inadmissibility may be waived in cases like Wood's where the visa applicant is a spouse of a U.S. citizen, but only by the Attorney General—not the Department of State—and only when "the refusal of admission to such immigrant alien would result in extreme hardship to the citizen." *Id.* § 1182(a)(9)(B)(v). Wood understandably fears that consular officials in Vilnius, being under the direction of the Department of State and not the Attorney General, will fail to make provision for such a waiver request. The Department of State has issued regulations instructing consular officials to explain to aliens in Wood's position the procedure for requesting a waiver from the Attorney General. 22 C.F.R. § 40.92(3).

Before the December 2004 hearing, Wood moved for another continuance to afford her an opportunity to apply for adjustment of status based on her July 2004 marriage to an American citizen and her husband's I-130 petition (as yet unapproved). The IJ denied Wood's request (as he previously warned he would), citing the prior 14-month continuance based solely on Wood having misrepresented her status as a derivative asylum beneficiary (available only for spouses and children, *see* 8 U.S.C. § 1158(b)(3)(A) (2000)). The IJ explained that Wood essentially bought herself an extra 14 months of unlawful presence by failing to disclose her divorce at the January 2003 hearing. Wood had no remaining defenses to removal. The IJ granted voluntary departure in lieu of removal.

Wood appealed the denial of her continuance to the BIA. While that appeal was pending, another division of DHS approved Timothy Wood's I-130 visa petition on Lolita's behalf. Now armed with prima facie evidence that her marriage was bona fide (a prerequisite to applying for adjustment of status based on a marriage entered into during removal proceedings, 8 C.F.R. § 245.1(c)(8)(v) (2006)), Wood also asked the BIA to remand her case to the IJ to adjudicate her form I-485 (application for adjustment of status). In a one-page order, the BIA dismissed the appeal and denied the motion to remand. The BIA adopted and affirmed the IJ's justification for denying the additional continuance, and also stated a supplemental reason for denying either a continuance or remand—that further proceedings before the IJ were unnecessary because Wood did not merit discretionary adjustment of status. The BIA refused to exercise its discretion in Wood's favor "for the same reasons which the [IJ] set forth for declining to continue proceedings," that is, because she falsely presented herself as still married to her Lithuanian ex-husband

for purposes of derivative relief under his asylum application. The BIA then ordered Wood to voluntarily depart the country within 60 days or face removal. That final order gave rise to this petition for review.

## II. Discussion

Because the BIA adopted the IJ's decision but articulated a supplemental reason for affirmance, we review both decisions. *Gjerazi v. Gonzales*, 435 F.3d 800, 807 (7th Cir. 2006); *Giday v. Gonzales*, 434 F.3d 543, 547 (7th Cir. 2006). Wood's petition for review challenges the BIA's affirmance of the IJ's denial of a continuance and its independent determination that Wood did not merit a discretionary adjustment of status. When this case was orally argued, this circuit had not yet affirmatively decided whether the jurisdiction-stripping provision of § 242(a)(2)(B)(ii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a)(2)(B)(ii), applies to continuance decisions of immigration judges. We have now done so; in *Ali v. Gonzales,* 502 F.3d at 664, we held that § 1252(a)(2)(B)(ii) precludes judicial review of continuance decisions. Because the BIA, in its discretion, addressed and decided the merits of the status-adjustment question under 8 U.S.C. § 1255, Wood's case does not come within the exception to the jurisdictional bar recognized in *Subhan v. Ashcroft*, 383 F.3d 591, 595 (7th Cir. 2004). *See Ali,* 502 F.3d at 664-65. The adjustment-of-status determination itself is expressly immunized from our review. *See* 8 U.S.C. § 1252(a)(2)(B)(i) (2000). Accordingly, we have no jurisdiction to review either the BIA's affirmance of the denial of a continuance or its determination that Wood did not merit a discretionary status adjustment.

Constitutional claims and questions of law, however, are specifically exempt from the jurisdiction bar. *See* 8 U.S.C.

§ 1252(a)(2)(D); *see also Ali v. Achim*, 468 F.3d at 465. Wood's petition for review raises one legal question: she claims the BIA exceeded its appellate-review authority under 8 C.F.R. § 1003.1(d) by ruling on her entitlement to adjustment of status instead of remanding to the IJ to make that determination in the first instance.

We review de novo the question of whether the BIA's action was ultra vires. *See Guevara v. Gonzales*, 472 F.3d 972, 975-76 (7th Cir. 2007); *Knutsen v. Gonzales*, 429 F.3d 733, 736 (7th Cir. 2005). We note that because the BIA never interpreted the regulations pertaining to its appellate powers—it simply assumed it had the authority to deny Wood a status adjustment—its action is not entitled to the judicial deference normally afforded an agency's interpretation of its own regulations. *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *see Orichitch v. Gonzales*, 421 F.3d 595, 597 (7th Cir. 2005) (addressing judicial deference to the Board's statutory interpretations). We conclude the BIA acted within its regulatory authority when it denied Wood the discretionary relief underlying her request for a continuance and remand.

The pertinent regulations describe the BIA as "an appellate body charged with the review of those administrative adjudications . . . the Attorney General may by regulation assign to it." 8 C.F.R. § 1003.1(d)(1). The BIA has administrative appellate jurisdiction over decisions of IJs in removal proceedings. *Id.* § 1003.1(b)(3). While the BIA reviews an IJ's factual findings for clear error and may not itself engage in fact-finding, the BIA reviews de novo "questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges." *Id.* § 1003.1(d)(3)(i)-(iv). Whether an alien is entitled to an adjustment of status is a question of discretion over which the BIA exercises de novo review. 8 U.S.C. § 1255(a); *Wallace v. Gonzales*, 463 F.3d 135, 140-

41 (2d Cir. 2006). A closer question is whether Wood's entitlement to a status adjustment was properly before the BIA given that the IJ decision she appealed—the denial of a continuance—meant that the IJ refrained from deciding *any* adjustment-related issues in the first instance. Had Wood formally submitted a request for adjustment of status to the IJ, he would have (among other things) decided as an initial matter whether Wood merited a favorable exercise of discretion. 8 U.S.C. § 1255(a); 8 C.F.R. § 1245.2.

Wood claims the BIA's appellate jurisdiction extends only to issues actually decided by the IJ, not issues the IJ might have decided had he not denied her a continuance. We do not read the regulations so narrowly. As we have noted, under 8 C.F.R. § 1003.1(d)(3)(ii), the BIA's power of de novo review extends to "questions of . . . discretion . . . and all other issues in appeals from decisions of immigration judges." In other words, for a legal or discretionary issue to be within the scope of the BIA's review, it need only be a matter "in" the appeal. This does not require an explicit prior determination of the issue by the IJ. The BIA has routinely decided appeals based upon issues never reached by the IJ, a practice we have implicitly approved. *See, e.g.*, *Palmer v. INS*, 4 F.3d 482, 485 (7th Cir. 1993) (denying petition for review where Board determined alien was not entitled to a form of discretionary relief never considered by the IJ).

The issue of Wood's entitlement to a status adjustment was certainly "in" her appeal because she asked the BIA to grant her a continuance and a remand to the IJ to pursue adjustment of status before the IJ. Implicit in Wood's request was the assertion that she merited a favorable exercise of discretion, a prerequisite to adjustment of status. 8 U.S.C. § 1255(a); *United States v. Singh*, 404 F.3d 1024, 1028 (7th Cir. 2005). It strikes us as both impractical and strange to suggest that the BIA, when

confronted with an alien seeking a continuance to apply for a purely discretionary form of relief, cannot decide whether the alien would merit a favorable exercise of that discretion. After all, the BIA—not the IJ—has the last word on issues of discretion (assuming no intervention by the Attorney General under 8 C.F.R. § 1003.1(h)). *See Guevara*, 472 F.3d at 975 (addressing impact of 8 C.F.R. § 1003.1(d)(3)); *Palmer*, 4 F.3d at 484 n.4.

Provided the BIA can do so without additional fact-finding, 8 C.F.R. § 1003.1(d)(3)(iv), we see no reason why it must avoid issues of discretion in an appeal because they were never reached by the IJ. Although this proviso is potentially important, in Wood's case the BIA did not stray from the administrative record; it premised the exercise of its discretion on the IJ's finding that Wood falsely portrayed herself as Bendikas's wife for purposes of asylum during the January 2003 hearing. We conclude the BIA acted within the scope of its appellate jurisdiction when it denied Wood the discretionary relief for which she unsuccessfully sought a continuance before the IJ.

Wood raises no other legal or constitutional challenge to the decision of the BIA. 8 U.S.C. § 1252(a)(2)(D). Accordingly, her petition for review is DENIED.

A true Copy:

       Teste:

 

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*