In the

# United States Court of Appeals
### For the Seventh Circuit

No. 07-3821

IMAD MALIK, SAAD MALIK, and FAHAD MALIK,[1]

*Petitioners,*

*v.*

MICHAEL B. MUKASEY,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
Nos. A95-583-352, A95-583-360, and A95-583-361

ARGUED SEPTEMBER 3, 2008—DECIDED OCTOBER 23, 2008

Before POSNER, RIPPLE, and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge.* Three brothers, Imad, Fahad, and Saad Shoukat, moved to continue their removal proceedings so that they could apply to become lawful permanent residents based on their marriages to United States citi-

[1] We have retained these names from the captions on the briefs, but as our opinion explains, the last names of the petitioners are inaccurate.

zens. The immigration judge denied the motion after concluding that a continuance would be futile since their applications were destined to be denied. The Board of Immigration Appeals affirmed, leading to this petition for review. The pivotal issue for us is whether we have jurisdiction to consider the petition.

Imad and his twin brothers Fahad and Saad are citizens of Pakistan (although the twins were apparently born in the United Arab Emirates) who entered the United States in 2001. Their parents came to the United States as well, and their father filed an asylum application, claiming that he and the boys were Indian citizens of Islamic faith, facing religious discrimination in India. Fahad and Saad, 17 years old at the time, were listed as derivatives on their father's application, but with a slight twist on their names. Pakistan follows a patronymic system, where children take the father's first name as their last name. Perhaps to distance them from this Pakistani tradition, Fahad and Saad were listed on the application with the last name of "Malik," the same last name as their father. Imad, who apparently arrived here a few months before his father and brothers, was 22 years old at the time so he filed a separate asylum application, also claiming that he was an Indian citizen with a last name of Malik. The father's first name, as it turned out, was "Shoukat" and that, not Malik, was the brothers' correct last name.

Both Imad and his father were interviewed by an asylum officer, but their applications were not granted. Instead, the family was placed in removal proceedings, where they maintained the guise of Indian citizenship.

Notices to appear initiating the proceedings were issued, and at a preliminary hearing all three of the brothers asserted, through their attorney, that their allegations of Indian citizenship were true. By this time, Fahad and Saad were 18 and Imad was 23 years old. Throughout the preliminary hearings, the Shoukats continued to pursue their bogus asylum claims; Imad even filed an updated asylum application, reiterating that he was an Indian citizen facing religious discrimination there because he is a Muslim.

The Shoukats did not fess up until they got caught. Apparently, the initial asylum applications were filled out with the help of an individual who became the focus of a Joint Terrorism Task Force investigation. The Shoukats' home was searched during this investigation, and it was then, two years after their removal proceedings got underway, that the brothers admitted they were actually citizens of Pakistan and that their given last name was Shoukat, not Malik. At that time Saad and Fahad were 20 years old and Imad was 24 years old.[2] Once their attorney learned about their true citizenship, the asylum applications were withdrawn.

After giving their sworn statements, each brother allegedly got married to a United States citizen, who

---

[2] The IJ states that Imad was in "his late teens" when he made this statement. However, according to the birthday listed in his Pakistani passport, he was 24 years old. What's more, Imad stated during a preliminary hearing that took place two years before he gave this statement that he was 22 years old.

filed I-130 visa petitions shortly before the final removal hearing got started. Because the petitions remained pending by the time the hearing rolled around, the brothers asked for a continuance so their petitions could be adjudicated and that they could apply to adjust their status to that of a lawful permanent resident. The IJ (Jenni L. Giambastiani) denied the request and ordered the brothers removed, explaining that there was no sense waiting because the brothers' asylum applications would surely be denied. She began by noting the dearth of evidence presented by the brothers. Although their "wives" were present in court, the brothers offered no documentary evidence—not even a copy of a marriage certificate—to show that they had in fact married, that the nuptials were entered into in good faith (i.e., not for the purpose of procuring immigration benefits), or that they would be eligible to adjust their status if the petitions were granted. Based on this lack of evidence, the IJ was not satisfied that the brothers were statutorily eligible to adjust their status. *See* 8 U.S.C. § 1255(e). The IJ went on to conclude that even if the brothers were eligible to adjust their status, she would deny their applications as a matter of discretion because they had all lied to her, and Imad lied to the asylum officer during his interview. She acknowledged that the brothers were young (and probably under the thumb of their father) when the fraud first occurred, but she noted that each helped to perpetuate the fraud throughout the removal proceedings by claiming that they were Indian citizens and that their last name was Malik. And "young," of course, is a relative term. Being over 16—and eligible for a driver's license—is quite different than being 10.

The brothers appealed the IJ's decision and the BIA affirmed. Like the IJ, the BIA acknowledged that the brothers were young when the fraud occurred but concluded that they were old enough to know better and to be held accountable for their actions. *Compare Singh v. Gonzales*, 451 F.3d 400, 403, 409 (6th Cir. 2006) (refusing to impute fraud of parents to their 5-year-old child).

The brothers now appeal, again arguing that the IJ erred in denying their motion for a continuance. But before we can reach the merits of this argument, the brothers must overcome two jurisdictional hurdles. First, the denial of the continuance was an ancillary "procedural step along the way to an unreviewable final decision"—the denial of their adjustment applications—and we generally lack jurisdiction to review such interim rulings. *Ali v. Gonzales*, 502 F.3d 659, 664, (7th Cir. 2007); *Leguizamo-Medina v. Gonzales*, 493 F.3d 772, 775 (7th Cir. 2007); 8 U.S.C. § 1252(a)(2)(B)(i). Secondly, 8 U.S.C. § 1252(a)(2)(B)(ii) prohibits our review of an IJ's discretionary rulings, such as the denial of a continuance during removal proceedings. *Ali*, 502 F.3d at 663. There is, however, an exception to these jurisdictional bars. We retain jurisdiction where the decision to deny a motion for a continuance has the "effect of nullifying the statutory opportunity to adjust status." *Ceta v. Mukasey*, 535 F.3d 639 (7th Cir. 2008); *Ali*, 502 F.3d at 665; *Subhan v. Ashcroft*, 383 F.3d 591, 593-94 (7th Cir. 2004). In other words, motions for a continuance cannot be denied for arbitrary reasons or reasons inconsistent with the adjustment-of-status statute, 8 U.S.C. § 1255. *See Subhan*, 383 F.3d at 595 (exercising jurisdiction where a continu-

ance was denied only because the government had yet to act on the alien's request for a certificate necessary to adjust status).

But denying a continuance because the alien's past conduct disqualifies him to adjust his status, as the IJ did here, is consistent with § 1255, *Pede v. Gonzales*, 442 F.3d 570, 571 (7th Cir. 2006), and we lack jurisdiction to review the denial. *Ali*, 502 F.3d at 663. The IJ concluded that the brothers' applications were ultimately hopeless. An alien is only entitled to adjust his status if he meets all the statutory eligibility requirements and he merits a favorable exercise of discretion. 8 U.S.C. § 1255(a), (e); 8 C.F.R. § 1245.1. If an alien seeks to adjust his status based on a marriage entered into while removal proceedings are pending, as is the case here, the alien must show by clear and convincing evidence that he was married in good faith, not simply to forestall removal. 8 U.S.C. § 1255(e). The IJ found that the brothers, who provided no documentary evidence, failed to demonstrate that they could meet that burden. And in any event, the IJ concluded that even if the I-130 petitions were granted (after the IJ's ruling, two of the petitions were apparently approved) and the brothers met all the eligibility requirements, she would deny the applications as a matter of discretion because they lied to her, and Imad, in addition, had also lied to an asylum officer. Thus, the brothers' right to adjust their status was not nullified, they just didn't qualify for relief. *See Pede*, 442 F.3d at 571 (holding that the denial of a continuance based on the ultimate hopelessness of an adjustment application is "perfectly acceptable").

Of course, even though our ability to review the IJ's discretionary decisions is limited, our jurisdiction to review questions of law and constitutional claims remains intact. 8 U.S.C. § 1252(a)(2)(D). The Shoukats attempt to invoke this jurisdictional provision by arguing that the IJ erred as a matter of law by attributing their father's fraud to them. But this argument misses the mark. The IJ held that each brother, given their ages at the time, was accountable for his own actions and misrepresentations.

Accordingly, the petition for review is DISMISSED for lack of jurisdiction.