In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-3267

BEATA ZARZECKI,

*Petitioner,*

*v.*

MERRICK B. GARLAND, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A089-783-701

SUBMITTED SEPTEMBER 4, 2024 — DECIDED JANUARY 3, 2025

Before ROVNER, BRENNAN, and LEE, *Circuit Judges.*

ROVNER, *Circuit Judge.* Beata Zarzecki unsuccessfully petitioned the Attorney General, through the immigration courts of the Department of Homeland Security, to use his discretion to adjust her status from "removeable" to "lawful permanent resident," and now asks for our review. Appellate courts are accustomed to evaluating decisions from lower courts using either a de novo standard of review, or some form of review

that grants deference to the decisions of those courts—such as clear error or abuse of discretion. In the field of immigration law, however, Congress has opted to place discretionary decision-making regarding adjustment of status in the hands of the immigration courts alone. Consequently, the Immigration and Nationality Act strips jurisdiction from this court to review any discretionary determination that the immigration courts make regarding whether or not to grant adjustment of status. There is, however, an exception: this court can review the decisions of the immigration judge and Board of Immigration Appeals (Board) for legal error, including constitutional error. Zarzecki argues that the Board erred legally when it denied her adjustment of status, but we find otherwise. We therefore must dismiss her petition for review for lack of jurisdiction.

## I.

Zarzecki, a Polish national, entered the United States on April 28, 1989, on a six-month tourist visa, but has remained in this country ever since. In 1998, she married her husband, Janusz Zarzecki, who is now a United States citizen, as is their daughter, Katarzyna, who was born in 1996. Zarzecki also has a son from a previous marriage who remained in Poland when Zarzecki left and was raised by Zarzecki's parents. On February 28, 2013, the government began removal proceedings against Zarzecki who then applied for adjustment of status based on an immigrant visa petition filed by her citizen spouse, Janusz.

Zarzecki's actions leading up to, and conviction following, a fatal drunk driving accident took center stage at her adjustment of status hearing held in October 2013. At that hearing, the following facts emerged: On July 26, 2005, Zarzecki began

drinking at the house where she worked as a caregiver. She called her husband to pick her up, but then decided to drive home after she tired of waiting for him. On her way home, while driving an estimated 80 miles per hour in a 55 mile per hour zone, she struck a car from behind, killing Charlotte Rymark and severely injuring her husband, Robert. Toxicology testing revealed that Zarzecki had a blood alcohol serum level of 254 mg/dl (0.254 BAC. The legal limit for intoxication is 80 mg/dl or .08 BAC). In a negotiated plea deal, Zarzecki pled guilty to "felony aggravated driving under the influence" and was sentenced to nine years in prison, of which she served eight years and three months.

The immigration judge also considered two other contacts with law enforcement. In 2003, police arrested and charged Zarzecki with aggravated assault following an argument with her husband which occurred when he arrived home from work to find her drinking. The charges were later dropped. And in 2004, Zarzecki was charged (but not convicted) of driving without insurance.

Although the fatal accident laid the heaviest weight on the scale against adjustment of status, Zarzecki hoped that evidence about her mental health treatment would be one of the mitigating factors favoring adjustment. At her hearing before the immigration judge, Zarzecki testified about her mental health. She stated that she was first diagnosed with depression at the age of seventeen in Poland, but she did not receive any treatment until 1996, when she was in the United States and a medical provider prescribed Prozac. She testified that sometimes, because she felt better, she would stop taking the medication for two to three months at a time, and then would use alcohol to help her cope with the symptoms of depression

as they arose because it "worked faster." R. 122. According to Zarzecki, approximately a year and a half after she was released from prison, she started having suicidal thoughts and admitted herself to a hospital for two weeks. She submitted no documents or other evidence regarding that hospitalization.

Other than her own testimony, the only evidence about her mental health treatment came from a few sources, with superficial information. First, Zarzecki submitted a three-sentence letter, dated September 11, 2018, from Dr. Bindu Gandhiraj which stated, "To Whom It May Concern: This is to notify you that I have been seeing Beata Zarzecki at the VNA since 08/08/2016 for treatment of depression and anxiety. She has been very compliant with her treatment and follows all the recommendations. Please contact our office if you have any questions." R. 203. Zarzecki submitted three other cursory pieces of evidence regarding treatment for mental health issues. The first was a "Treatment Note" from the Illinois Department of Corrections dated April 7, 2009, reflecting a diagnosis for depression disorder, and noting that Zarzecki wished to stop taking her medication for depression. R. 399. The second was a notice addressed to the Immigration and Naturalization Office from the Alcohol Drug Safety Intervention Inc. and Polish American Family Services, dated March 13, 2013, shortly after her release from prison. That note stated, "Mr. Janusz Zarzecki, husband of Beata Zarzecki contacted our program to arrange treatment relating to her 2005 DUI arrest. Mrs. Zarzecki will attend and participate in the PROGRAM FOR PROBLEMATIC USE OF ALCOHOL at our clinic as soon as she will be released." R. 374. Zarzecki provided no certificate of completion or any evidence that she attended the program at all. Finally, the record contains a single

email from Dr. Poprawski of the First Chicago Neuroscience clinic to Janusz Zarzecki confirming his wife's appointment on March 12, 2013. R. 376. Again, Zarzecki submitted no evidence about the nature of the appointment or whether she attended it.

Zarzecki testified that she did not attend group counseling and did not seek any counseling at all until a year and a half after her release from prison, explaining that once she got home from prison, she "thought [she] would feel better" and "didn't want to hear about seeing any doctors." R. 125. Zarzecki alleged, without external evidence, that she had been diagnosed with agoraphobia and did not want to leave the house.

When asked whether she had attended any drug and alcohol treatment programs, she testified that "while in jail" she "tried to attend this kind of meeting[]" and "also once [she] got back home, there was a facility close by" but "they made [her] feel horrible," she "couldn't stand being there," and they were "more troublesome than they should be." R. 118–19. On redirect examination, Zarzecki elucidated that she prefers one-on-one therapy to "meetings with other people" because she can "talk about [her] stuff" and she does not "like listen[ing to] other people['s] problems … they complain very much, you know," and this makes her feel "depressed." R. 127–28. She explained that alcohol treatment would inconvenience her husband or daughter who would have to drive her to the meetings, although she also testified that she has taken an Uber to treatment.

The immigration judge also considered Zarzecki's testimony that if she were removed to Poland, she would have no social network, nowhere to live, would have trouble finding

work there, and that her husband and daughter would not accompany her, as they too would have trouble finding employment in Poland. He also considered the hardship it would create for her daughter, Katarzyna, who had already endured almost nine years of her childhood motherless.

Despite the sympathetic factors, the immigration judge found that Zarzecki had not adequately addressed her mental health issues nor demonstrated an attempt to atone for the devastating loss of another life. In addition to noting the serious nature of the offense of driving while intoxicated, he also noted her failure to take her medication, her use of alcohol in lieu of the prescribed medication, her decision to drive while intoxicated despite the offer from her husband to drive her home, and her lack of effort to address her mental health issues following her release from prison. He thus denied her application for adjustment of status and ordered her removed to Poland.

Upon the Board's de novo review, it concluded that the extremely egregious circumstances surrounding the drunk driving accident were not outweighed by any countervailing factors, including Zarzecki's family ties, her long residence in the United States, and familial and financial difficulties that would result from her removal. The Board concluded that, despite Zarzecki's arguments to the contrary, the immigration judge did indeed consider her mental health issues. The Board concluded that Zarzecki's brief did "not refer to any particular testimony or documentary evidence relating to her mental health that the Immigration Judge disregarded." R. 4. Nor did she explain how her "mental health constitutes an equity that weighs in favor of an exercise of discretion." R. 4. The Board concluded that Zarzecki neglected to establish

"equities that outweigh the serious adverse factors present in this case" and thus, did not satisfy her burden of proof of demonstrating that she merited relief in the exercise of discretion. R. 5. Zarzecki timely filed a petition for review in this court, arguing that the Board did not appropriately apply de novo review and failed to consider the expert medical evidence.

## II.

As a noncitizen who illegally remained in the United States longer than permitted, Zarzecki was subject to removal under 8 U.S.C. §1227(a)(1)(B) of the Immigration and Nationality Act. Congress, however, has given the Attorney General (who acts through a delegation of power to the immigration judges and the Board) discretion to forgive the illegal activity and adjust an eligible noncitizen's status to protect the noncitizen from removal, as "a matter of grace." *Patel v. Garland*, 596 U.S. 328, 332 (2022) (*quoting INS v. St. Cyr*, 533 U.S. 289, 308 (2001)); 8 U.S.C. §1255(a). That discretionary power, however, has been specifically reserved for the Attorney General. Section 1252(a)(2)(B)(i) of the Act specifically precludes judicial review of "any judgment regarding the granting of relief under section … 1255," which includes discretionary determinations related to adjustment of status. 8 U.S.C. §1252 (a)(2)(B)(i); *Patel*, 596 U.S. at 347. Notwithstanding this provision, this court does retain jurisdiction to review claims of legal or constitutional error. *See* 8 U.S.C. §1252(a)(2)(D); *Ndlovu v. Garland*, 99 F.4th 997, 998 (7th Cir. 2024). We have interpreted the phrase "questions of law" in this subparagraph narrowly, holding that legal questions are limited to those in which the "'Board misinterprets a statute, regulation, constitutional provision, or its own precedent, applies the wrong

legal standard, or fails to exercise its discretion at all.'" *Martinez-Baez v. Wilkinson*, 986 F.3d 966, 970 (7th Cir. 2021) (*quoting Bachynskyy v. Holder*, 668 F.3d 412, 417 (7th Cir. 2011)).

Zarzecki's primary complaint is that the Board failed to properly consider the expert medical evidence. She is correct that the wholesale failure to consider evidence would constitute an error of law—in the sense that it would demonstrate a failure to exercise discretion at all. *Id.* at 978 (*citing Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008)). Thus, Zarzecki's claim that the immigration judge and Board completely ignored expert evidence would be an allegation of legal error. *Id.*; *see also Arej v. Sessions*, 852 F.3d 665, 667 (7th Cir. 2017) ("[T]he Board cannot make a reasoned decision to deny a motion to reopen if it ignores the evidence that a petitioner presents."); *Ward v. Holder*, 632 F.3d 395, 397 (7th Cir. 2011) (whether the Board failed to exercise discretion at all is a legal question).

On the other hand, "the [Board] does not commit an 'error of law' every time an item of evidence is not explicitly considered or is described with imperfect accuracy." *Martinez-Baez*, 986 F.3d at 976 (*quoting Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009)). In short, only a wholesale dereliction of duties to consider the evidence amounts to a reviewable legal error. The immigration judge and Board do not commit legal error simply because they do not "'expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner.'" *Ji Cheng Ni v. Holder*, 715 F.3d 620, 625 (7th Cir. 2013) (*quoting Shao v. Mukasey*, 546 F.3d 138, 169 (2d Cir. 2008)).

Zarzecki does not argue that the immigration judge and Board excluded her expert evidence wholesale. Instead, she

complains that the immigration judge and Board "fail[ed] to accord the *requisite weight* to expert evidence concerning the Petitioner's medical treatment for her mental health conditions." Zarzecki Brief at 18 (emphasis ours). She also argues that the immigration judge and Board did not "fully embrace" the medical evidence, give the facts their "due significance," "provide a comprehensive review," or provide a "meticulous factual … analysis." *Id.* at 19–21. These are complaints about the depth and weight the agency gave to the evidence and testimony. The balancing of evidence, however, is at the very core of the discretionary authority of the agency, over which we lack jurisdiction. *Kiorkis v. Holder*, 634 F.3d 924, 928 (7th Cir. 2011), *as amended* (Mar. 10, 2011) (noting that an appellate court is prohibited from reviewing the discretionary methods the agency uses to weigh various factors). And as we noted, although the Board may not disregard relevant evidence, it also need not itemize and explain thoroughly each piece of evidence offered. *Salazar-Marroquin v. Barr*, 969 F.3d 814, 818 (7th Cir. 2020); *see also Bernardo-De La Cruz v. Garland*, 114 F.4th 883, 893 (7th Cir. 2024) (it is not legal error simply because the immigration judge's consideration "of the evidence could have been more thorough"); *Martinez-Baez*, 986 F.3d at 976 ("the [Board] does not commit an 'error of law' every time an item of evidence is not explicitly considered or is described with imperfect accuracy."); *Meza v. Garland*, 5 F.4th 732, 737 (7th Cir. 2021) (The brevity of the judge's analysis alone does not amount to a legal error.).

But there is a more fundamental problem with Zarzecki's argument about the expert testimony. It is not clear to what expert testimony she is referring. Despite Zarzecki's brief stating that she submitted "extensive medical documentation," no expert proffered a report or affidavit or testified on her

behalf. Zarzecki Brief at 19. She offered but one medical record with a diagnosis—one page from an Illinois Department of Corrections Mental Health Diagnostic and Treatment Note which lists a diagnosis of "depression disorder," but also noted her desire to cease medication for depression—the very behavior for which the immigration judge faulted her. R. 399. She did not present any other medical records regarding her diagnosis, specific treatment plans, or prognosis. Her brief includes only the most minimal references to anything that could be considered expert evidence. Dr. Gandhiraj wrote a letter stating that she had been seen between August 2016 (three years after her release from prison) and September 2018 for treatment of depression and anxiety and had been "very compliant with her treatment and follows all the recommendations." R. 203. Zarzecki, however, provided no evidence regarding his qualifications or expertise, what treatment she had been receiving, how often she received it, what it meant that she was "compliant," or any other evidence that she was on track to remedy the problems that had contributed to the fatal accident. The only other reference to any treatment came in the form of two attempts by Zarzecki's husband to make appointments for his wife, with no accompanying evidence that she attended those appointments. One email dated March 12, 2013, addressed to her husband indicated that Zarzecki had an appointment scheduled with a Dr. Poprawski at the First Chicago Neuroscience Clinic on March 27, 2013. R. 376. Zarzecki submitted no documents indicating that Dr. Poprawski ever treated or saw Zarzecki. Likewise, Zarzecki produced no documentary evidence indicating that she received any treatment from the Alcohol Drug Safety Intervention Inc. and Polish American Family Services despite the March 13, 2013 letter from her husband to the organization

attempting to arrange treatment. R. 374. And it seems unlikely that she did, given her testimony that she did not attend any therapy for at least a year and a half after her release from prison and did not like to attend group therapy. And although Zarzecki's brief states that she was diagnosed with agoraphobia, she did not submit a single piece of medical evidence reflecting this diagnosis. In short, Zarzecki has appealed because "the Board of Immigration Appeals erred when it failed to properly consider the expert medical evidence," (Zarzecki Brief at 5) but she does not tell us what expert medical evidence in the record the Board failed to consider.

In an effort to be exceptionally generous to Zarzecki, we could interpret her claim that the Board failed to consider *expert* medical evidence as a claim that the Board failed to consider any of her *own* self-reports about her mental health and treatment.[1] But, in fact, both the immigration judge and the Board did consider this evidence. The immigration judge considered her unverified evidence that she was hospitalized for

---

[1] An immigrant's own testimony indeed can be sufficient to sustain an applicant's burden without corroboration. *See* 8 U.S.C. §1158 (b)(B)(ii). "Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id*. In this case, it would have been reasonable for the immigration judge to expect that Zarzecki would have records of her health diagnoses and treatment because both those things would have been recent and they occurred within the United States where health records would have been readily obtainable. In any event, the immigration judge and Board considered Zarzecki's own testimony about her mental health, but ultimately concluded nevertheless that she did not adequately explain how her "mental health constitut[ed] an equity that weigh[ed] in favor of an exercise of discretion." R. 4.

three weeks for depression, that she had been diagnosed with depression at age 17 while in Poland, and that she had been prescribed Prozac. He also accepted her unverified and unsupported allegation that she attended group counseling and individual therapy. The Board, in turn, considered her claim that the immigration judge failed to adequately consider her mental health issues. The Board noted that it was stymied in any attempt to consider those claims further, as Zarzecki did not point to any particular testimony or documentary evidence relating to her mental health that the immigration judge disregarded or explain how the respondent's mental health "constitute[d] an equity that weigh[ed] in favor of an exercise of discretion." R. 4.

Zarzecki also claims that the Board failed to review the immigration judge's decision de novo. Indeed, applying the incorrect standard of review would constitute legal error. *F.J.A.P. v. Garland*, 94 F.4th 620, 638 (7th Cir. 2024). It is hard to know, however, with what Zarzecki finds fault. She complains that the Board did not apply de novo review, but in the next sentence argues that the Board "substitute[d] its discretion in areas requiring legal and factual precision." Zarzecki Brief at 17. Of course, de novo review means that the Board would consider Zarzecki's case anew—which, in a case about discretion, would mean applying its discretion independently. *See* 8 C.F.R. §1003.1(d)(3)(ii). Zarzecki does not offer any citations to this court for the appropriate standard of review when the Board reviews decisions of the immigration judge (and her short appendix is missing the last page of the Board's opinion, making our review more cumbersome still). Despite Zarzecki's claims that the Board should consider "both facts and legal interpretations" de novo (Zarzecki Brief at 17), the Board reviews factual findings only for clear error

and not de novo. *F.J.A.P.*, 94 F.4th at 638; 8 C.F.R. §1003.1(d)(3)(i). This is a highly deferential standard and means that the Board's role was to review the immigration judge's findings about Zarzecki's medical evidence for clear error only. The Board reviews all other issues, including "questions of law, discretion, and judgment" de novo. 8 C.F.R. §1003.1(d)(3)(ii). Consequently, "[w]hether an alien is entitled to an adjustment of status is a question of discretion over which the BIA exercises de novo review." *Wood v. Mukasey*, 516 F.3d 564, 569 (7th Cir. 2008) (citing 8 U.S.C. §1255(a)). It may not, however, engage in fact-finding to do so.

Contrary to Zarzecki's allegations, the Board not only stated the proper standard of review, but also applied it appropriately. The Board addressed the key factual findings made by the immigration judge, and then used those findings to conduct its own consideration of whether Zarzecki was entitled to discretionary relief. The Board noted the serious nature of Zarzecki's conviction for aggravated driving under the influence of alcohol and noted that the circumstances leading to the accident were particularly egregious. The Board then weighed the egregiousness of the harm against the countervailing equities in favor of adjustment—such as Zarzecki's "family ties, particularly her United States citizen husband and adult daughter as well as her long residence in the United States since 1989… [and] separation from her family and financial difficulties that accompany removal to a country she had not resided in for over 30 years." R. 4. After considering all of the factors, the Board then concluded that Zarzecki "ha[d] not demonstrated unusual or outstanding equities that outweigh the adverse factors present here." *Id.*

The Board "is not required to 'write an exegesis on every contention' in a particular case, it must nonetheless 'consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.'" *Guerra Rocha v. Barr*, 951 F.3d 848, 853 (7th Cir. 2020) (*quoting Mansour v. I.N.S.*, 230 F.3d 902, 908 (7th Cir. 2000)). The Board sufficiently met its obligations here and applied the proper standard of review.

In sum, both the immigration judge and Board considered and weighed the factors Zarzecki presented in mitigation, with the Board applying the proper standard of review. The agency did not commit any legal or constitutional error. We therefore lack jurisdiction to review such discretionary judgments pursuant to 8 U.S.C. §1252(a)(2).

Accordingly, the petition for review is **DISMISSED** for lack of jurisdiction.