# In the

# United States Court of Appeals

## For the Seventh Circuit

——————

Nos. 04-2119 & 04-2485

UDAY P. SINGH,

*Petitioner*,

v.

ALBERTO GONZALES, United States
Attorney General,[1]

*Respondent.*

——————

Petitions for Review of an Order of
the Board of Immigration Appeals.
No. A73-010-867

——————

ARGUED DECEMBER 7, 2004—DECIDED APRIL 15, 2005

——————

Before BAUER, MANION, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Uday P. Singh, a native and citizen of India, petitions for review of the Board of Immigration Appeals' (the "Board") denial of his motion to reopen and remand for adjustment of status and his motion for reconsideration. Singh sought the adjustment of status pursuant to an approved visa petition filed by his wife, whom he

---

[1] Pursuant to FED. R. APP. P. 43(c), we have substituted Alberto Gonzales for John Ashcroft as the named respondent.

married while removal proceedings were pending against him. For the reasons that follow, we deny Singh's petitions.

## I.  Background

Singh entered the United States in September 1991 as a non-immigrant business visitor with authorization to remain in the country for six months. Singh overstayed his visa and applied for adjustment of status based on marriage in 1994. The Immigration and Naturalization Service ("INS") denied the application, explaining its decision as follows:

> On July 15, 1991, [Singh] filed an application for a non-immigrant visa at the United States Consul at New Delhi, India. At that time, [Singh] gave sworn testimony, before a Consular Officer, that [he was] married and coming to New York City on business. Based on [Singh's] testimony [he] was issued a non-immigrant visa, which [he] used to enter the United States on September 27, 1991. On April 26, 1994, [Singh] filed an application for adjustment of status to that of lawful permanent resident, based on [his] marriage to a United States citizen. [Singh] was interviewed on [his] application and testified, before a Service Officer, that [his] marriage to Keysa Hines was [his] first marriage. [He] also testified that [he] resided with Keysa at his home located at 3331 W. Flournoy in Chicago. The Service conducted an investigation of the bona fides of [Singh's] marital relationship and determined that [he] did not reside with Keysa Hines. Based on the investigation, the petition which Keysa Hines had filed on [his] behalf was denied. Suppression of the facts that [Singh was] previously married in India and that [Singh was] not residing with the petitioner, Keysa Hines, constitutes a wilful misrepresentation in violation of Section 212(a)(6)(C) [of the] INA.

A.R. 6-7. In its Notice of Intent to Deny Petition for Alien Relative letter to Keysa Hines, the INS detailed its investigation of the Singh/Hines marriage, which included interviews of Singh's family members and other residents of 3331 W. Flournoy. The letter stated, "[Y]our marriage to Uday P. Singh is a sham. You entered into the marriage in order to procure an immigrant visa for your husband. Therefore, it is the intention of this office to deny your petition." A.R. 242-43.[2]

The INS commenced removal proceedings against Singh in February 1998. Singh conceded removability and sought relief in the form of asylum, withholding of removal, and protection under the Convention Against Torture. An immigration judge ("IJ") ruled against Singh on all counts and denied him voluntary departure due to his misrepresentation about his marital status on his 1991 visa application. Singh appealed to the Board.

Subsequent to the IJ's ruling but prior to the Board issuing a decision on appeal, Singh married Andreah Singh, a United States citizen, and the INS approved a marital visa petition (Form I-130) filed by Singh's wife on his behalf. Singh filed a motion to reopen and remand in order to apply for adjustment of status (Form I-485) based on his marriage. The Board dismissed his appeal and denied his motion to reopen and remand. Singh filed a motion to reconsider,

---

[2] Singh argues that the Board erred in considering the evidence about the bona fides of his marriage to Hines because it is inadmissible hearsay. However, "[c]onventional rules of evidence do not apply in immigration proceedings, which are governed only by the looser standard of due process of law." *Olowo v. Ashcroft*, 368 F.3d 692, 699 (7th Cir. 2004) (citation omitted). Singh does not challenge the evidence on due process grounds, and we do not think that the Board's use of the evidence violated Singh's due process rights. Like the Board, we view the evidence as probative and will consider it.

which the Board denied. Singh appeals both the motion to reopen and the motion to reconsider.

## II. Discussion

### A. Jurisdiction

We begin with the INS' contention that 8 U.S.C. § 1252(a)(2)(B)(ii) deprives us of jurisdiction to review the Board's denial of Singh's motion to reopen. Section 1252(a)(2) (B)(ii) bars judicial review of "any . . . decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . ." According to the INS, rulings on motions to reopen fall within the ambit of the § 1252(a)(2) (B)(ii) jurisdictional bar because they are discretionary decisions of the Attorney General, the authority for which is specified under the referenced subchapter. We disagree.

Before 1996, the authority for motions to reopen derived solely from the regulations. Congress codified the motion to reopen process in 1996 in 8 U.S.C. § 1229a(c)(6), a provision within the subchapter referred to in the jurisdiction-stripping provision. However, the statutory language only describes the contents of motions to reopen and the filing deadlines. Conspicuously absent is any specific language entrusting the decision on a motion to reopen to "the discretion of the Attorney General." Moreover, a subsection of § 1252, the section that also contains the jurisdiction-stripping provision, provides that when a petitioner appeals a motion to reopen or reconsider an order, that appeal should be consolidated with the appeal of the underlying order. 8 U.S.C. § 1252(b)(6). That provision would be unnecessary if § 1252(a)(2)(B)(ii) deprived us of jurisdiction in the first place. *See Stone v. INS*, 514 U.S. 386, 397, 115 S.Ct. 1537, 131 L. Ed. 2d 465 (1995) (noting that courts must construe statutes to give effect, if possible, to every provision). Consequently, we join the two other circuit courts that have

considered this issue, *Medina-Morales v. Ashcroft*, 371 F.3d 520 (9th Cir. 2004); *Infanzon v. Ashcroft*, 386 F.3d 1359 (10th Cir. 2004), and conclude that we have jurisdiction to review the Board's denial of Singh's motion to reopen.

## B.  Standard of Review

We review the Board's decision on a motion to reopen or a motion to reconsider under the abuse of discretion standard. *Wijeratne v. INS*, 961 F.2d 1344, 1348 (7th Cir. 1992). Under this deferential standard, we uphold the Board's ruling "unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a race or particular group." *Achacoso-Sanchez v. INS*, 779 F.2d 1260,1265 (7th Cir. 1985). The factual findings underlying the Board's decision must be supported by substantial evidence. *Ghaly v. INS*, 48 F.3d 1426, 1431 (7th Cir. 1995). Substantial evidence is evidence a reasonable mind would find adequate to support a conclusion. *Id.*

## C.  Order Denying Motion to Reopen

The Board premised its denial of Singh's motion to reopen for adjustment of status on the INS' opposition to his motion, his misrepresentation about his marital status on his 1991 application, and the evidence of his sham marriage in 1994. Singh attacks the Board's findings about the misrepresentation about his marital status and the sham marriage as unsupported by substantial evidence. Singh emphasizes that the "married" and "single" categories are adjacent to each other on the visa application form, and maintains that he made a mistake when he checked the "married" category. We are not persuaded by Singh's argument. When Singh checked the "married" box in 1991, he was attempting to convince a United States consulate officer in India that he

would not overstay a business visa if he were granted one. Thus, his asserted mistake would have been a convenient one because it tied him to India and may have influenced the officer's decision to grant the visa. In light of that possible motivation and Singh's subsequent admission that he was not married at that time, it was surely reasonable for the Board to conclude that Singh's action was intentional and fraudulent. The Board's finding about his sham marriage in 1994, which we discuss in greater detail below, was also reasonable and provided the Board with additional support for denying Singh's motion to reopen. Thus, we conclude that the Board's denial of Singh's motion to reopen was not an abuse of discretion.

## D.  Order Denying Motion to Reconsider

The Board denied Singh's motion to reconsider its ruling on the motion to reopen in a one-paragraph order. Citing *Matter of Velarde*, 23 I.&N. Dec. 253 (BIA 2002), the Board observed that Singh's motion to reopen and remand could only be granted in favor of a petitioner in Singh's circumstances if it was unopposed by the INS. Because the INS submitted a brief in opposition to Singh's motion, the Board denied the motion to reconsider. The Board's reliance on *Velarde* was erroneous. *Velarde* modified a prior opinion regarding decisions on motions to reopen for adjustment of status based on *unadjudicated* Form I-130 visa petitions, laying out five factors to be considered when confronted with such a situation. The instant case, on the other hand, involves a petitioner in removal proceedings with an *approved* Form I-130 visa petition, which constitutes "primary evidence" of a bona-fide marriage. 8 C.F.R. § 245.1(c)(9)(v). Thus, *Velarde* is inapplicable to Singh, and we must determine if the Board's error was harmless. *Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (noting that harmless error doctrine applies on review of administrative decisions).

We conclude that there is no point in remanding for further proceedings because the decision on remand is a foregone conclusion. Adjustment of status turns on two issues: (1) eligibility and (2) whether the application merits a favorable exercise of discretion. 8 U.S.C. § 1255(a).[3] The main hurdle for Singh with regard to eligibility is that he married Andreah Singh and applied for adjustment of status *while removal proceedings were pending against him*.[4] Under 8 U.S.C. § 1255(e)(1), the Attorney General is generally barred from adjusting the status of an alien on the basis of a marriage entered into during removal proceedings. The statute, however, carves out an exception if the alien establishes by clear and convincing evidence that the marriage was entered into in good faith and not for the purpose of procuring an immigration benefit. 8 U.S.C. § 1255(e)(3). While it would be possible on remand for Singh to overcome the general bar against adjustment of status based on a marriage entered into during removal proceedings, nevertheless we think his past behavior amounts to an insurmountable obstacle on his quest for adjustment of status, and that his application would be denied in the exercise of discretion. *See Dashto v. INS*, 59 F.3d 697, 704 (7th Cir. 1995) (alien bears burden of proving that he merits favorable exercise of discretion based on equitable considerations). In 1991, Singh misrepresented his marital status in an application for a business visitor visa. That misrepresen-

---

[3] Ordinarily, application for adjustment of status is made to the INS district director having jurisdiction over the alien's place of residence. 8 C.F.R. § 245.2(a). However, once an alien is in removal proceedings, his application for adjustment of status "shall be made and considered only in those proceedings." *Id.*

[4] Singh actually married and applied for adjustment of status after an IJ rejected his notably weak asylum case, in which he claimed past persecution and fear of future persecution due to being Hindu in India, where over 80% of the population is Hindu.

tation, coupled with the fact that Singh subsequently overstayed his business visitor visa, indicates that Singh had a preconceived intent to remain permanently in the United States and misrepresented his intentions when applying for the visa. In addition, Singh filed an application for adjustment of status in 1994 based on what the INS concluded was a sham marriage to Keysa Hines. The INS' determination was supported by probative evidence gleaned from interviews with Singh's grandmother, uncle, and two other residents of 3331 W. Flournoy, who all stated that Singh lived on the second floor with his daughter, mother, and brother, contradicting Singh's sworn testimony that he resided with Hines. The Board listed this history of fraudulent behavior when it initially denied Singh's motion to reopen despite the approved I-130 petition. That was a sound discretionary decision, and we have no reason to believe the Board would change course on a remand for a discretionary decision on adjustment of status when faced with the same evidence of fraud. The Board's reliance on *Velarde* was harmless error, and we decline to remand the case for further proceedings.

### III. Conclusion

For the reasons stated herein, Singh's petitions for review are DENIED.

A true Copy:

      Teste:

                         _____
                         *Clerk of the United States Court of*
                         *Appeals for the Seventh Circuit*