In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-1002

AGRON KUCANA,

Petitioner,

v.

MICHAEL B. MUKASEY, Attorney General
of the United States,

Respondent.

_____

Petition for Review of an Order of the
Board of Immigration Appeals.

_____

ARGUED DECEMBER 6, 2007—DECIDED JULY 7, 2008

_____

Before EASTERBROOK, Chief Judge, and CUDAHY and
RIPPLE, Circuit Judges.

EASTERBROOK, Chief Judge. Agron Kucana, a citizen of
Albania, entered the United States as a business visitor
in 1995 and did not leave when his visa expired. He
applied for asylum but, when he did not appear at the
hearing in the fall of 1997, he was ordered removed _in
absentia_. He soon filed a motion to reopen, contending that
he had overslept. An immigration judge denied that
motion, and in 2002 the Board of Immigration Appeals
affirmed. Kucana did not seek judicial review—nor did he

comply with the order to quit the United States. In 2006 Kucana filed another motion to reopen, this time contending that country conditions in Albania had deteriorated and that he would be a victim of persecution should he return there. Kucana, who describes himself as a supporter of democracy and free markets, contends that holders of these views are at risk of beatings and murder in Albania. The immigration judge denied this motion, and on appeal the Board held that the IJ lacked jurisdiction, because successive motions to reopen must be filed directly with the Board itself.

Treating Kucana's papers as a (second) motion to reopen, the Board denied that relief because conditions in Albania have improved since 1997. In 2006 a "Stabilization and Association Agreement" between Albania and the European Union was ratified. In 2007 a visa agreement was reached, so Albanians can travel throughout the EU. Albania is today a democratic nation with international guarantees of human rights; there have been no reported political killings or detentions for years.

Kucana argues in this court that the Board abused its discretion because it did not mention Professor Bernd Fischer's affidavit discussing conditions in Albania. Abuse of discretion is the right standard. No statute requires the Board to reopen under *any* circumstances, and a regulation confirms that the Board has discretion to deny relief even to an alien who would have received a favorable decision, had the argument been presented earlier. 8 C.F.R. §1003.2(a). It is difficult to perceive an abuse of discretion, for Prof. Fischer's affidavit does not document a change in Albanian conditions since 1997; it is instead a historical narrative reaching back to the time when Albania was a totalitarian dictatorship. But the parties' agreement

that "abuse of discretion" is the standard of review led us to wonder whether we should be considering Kucana's argument at all.

As amended by the Real ID Act of 2005, the Immigration and Nationality Act limits federal courts' jurisdiction to review discretionary decisions of immigration officials. Section 242(a)(2)(B)(ii) of the Act, 8 U.S.C. §1252(a)(2)(B)(ii), provides that no court has jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." Section 1158(a) deals with applications for asylum, but the decision that Kucana wants us to review is not one "under §1158(a)"; it is a decision not to reopen, and thus not to revive a request for asylum that had been abandoned in 1997 when Kucana failed to attend the hearing scheduled to address that subject.

Recently this circuit addressed the question—on which other courts of appeals are divided—whether §1252(a)(2)(B)(ii) applies when the agency's discretion is specified by a regulation rather than a statute. After the parties filed their briefs in this case, we held in *Ali v. Gonzales*, 502 F.3d 659 (7th Cir. 2007), that §1252(a)(2)(B)(ii) applies to discretionary decisions under regulations that are based on and implement the Immigration and Nationality Act. The discretionary decision in *Ali* was whether to grant an alien's request for a continuance of a hearing; here the discretionary decision is whether to reopen the proceeding and hold a new hearing. Regulations specify that both decisions are discretionary; both regulations draw their force from provisions in the Act allowing

immigration officials to govern their own proceedings. See 8 U.S.C. §1229a(c)(7) (authority for reopening by Board). It follows that they are equally subject to §1252(a)(2)(B)(ii).

We asked the parties for post-argument memoranda on the effect of *Ali* and §1252(a)(2)(B)(ii). Surprisingly, the Department of Justice argued that §1252(a)(2)(B)(ii) does not cover decisions not to reopen. The principal reason for this conclusion (at least the one to which the memorandum devotes the most space) is that in cases such as Kucana's the Board is making a factual decision (whether country conditions have worsened) rather than a discretionary one. This does not begin to distinguish *Ali*. Before deciding whether to grant a continuance (the discretionary decision), an immigration judge must decide whether there is a good reason for more time, which depends in turn on whether the statements of fact said to constitute the good cause are true. Surely the evaluation of the alien's circumstances cannot be reviewed notwithstanding §1252(a)(2)(B)(ii) and *Ali*.

*Every* discretionary decision, unless made by the flip of a coin, rests on the tribunal's appreciation of the state of the litigation and the state of the world. Section 1252(a)(2)(B)(ii) could not mean that a decision is unreviewable when made randomly or unthinkingly, but that if the agency pays attention to an application and has *reasons* for acting as it does, then those reasons can be reviewed (because in principle the reasons precede, and do not equal, the discretion). This is a stripe of argument that we have considered in other contexts and found wanting. See, e.g., *Daniels v. Liberty Mutual Insurance Co.*, 484 F.3d 884 (7th Cir. 2007) (prohibition on appellate review of remand orders does not leave the court of appeals free to review, as an independent matter,

the reasons behind the order); *Rubel v. Pfizer Inc.*, 361 F.3d 1016 (7th Cir. 2004) (same). And we have applied that understanding to immigration law. See, e.g., *Jiménez Viracacha v. Mukasey*, 518 F.3d 511 (7th Cir. 2008); *Leguizamo-Medina v. Gonzales*, 493 F.3d 772 (7th Cir. 2007). One cannot review the subsidiary findings that motivate an order, when the order itself is unreviewable; that would be an advisory opinion. See *Powerex Corp. v. Reliant Energy Services, Inc.*, 127 S. Ct. 2411, 2419 (2007).

A second contention in the Department's post-argument memorandum is that this court has already held §1252(a)(2)(B)(ii) inapplicable to reopening decisions. The panel in *Singh v. Gonzales*, 404 F.3d 1024, 1026–27 (7th Cir. 2005), said this:

> Before 1996, the authority for motions to reopen derived solely from the regulations. Congress codified the motion to reopen process in 1996 in 8 U.S.C. §1229a(c)(6), a provision within the subchapter referred to in [§1252(a)(2)(B)(ii)]. However, the statutory language only describes the contents of motions to reopen and the filing deadlines. Conspicuously absent is any specific language entrusting the decision on a motion to reopen to "the discretion of the Attorney General." Moreover, a subsection of §1252, the section that also contains the jurisdiction-stripping provision, provides that when a petitioner appeals a motion to reopen or reconsider an order, that appeal should be consolidated with the appeal of the underlying order. 8 U.S.C. §1252(b)(6). That provision would be unnecessary if §1252(a)(2)(B)(ii) deprived us of jurisdiction in the first place. See *Stone v. INS*, 514 U.S. 386, 397 (1995) (noting that

> courts must construe statutes to give effect, if possible, to every provision).

This passage gives two reasons: first, that the extent of the Board's discretion has been set by regulation rather than statute; second, that the clause allowing consolidation of challenges to original and reopening decisions would be unnecessary if §1252(a)(2)(B)(ii) prevents review of decisions not to reopen. The first of these reasons is not tenable in this circuit after *Ali*. The second needs a fresh look.

The panel's view in *Singh* was that consolidation of proceedings concerning direct and reopening decisions would be pointless, if orders denying reopening never were subject to judicial review. That was true when the panel issued its opinion (April 15, 2005) but is true no longer. On May 11, 2005, the Real ID Act, Pub. L. 109–13 Div. B Tit. I, took effect. Today decisions denying reopening are within our jurisdiction to the extent provided by §1252(a)(2)(D):

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

Because discretionary decisions now may be reviewed when they entail "constitutional claims or questions of law", there's nothing incongruous about the consolidation rule in §1252(b)(6). Applying §1252(a)(2)(B)(ii) to orders denying motions to reopen will not make any part of the statute unnecessary.

The Real ID Act not only changed the relation among statutory subsections but also alleviated the principal consideration that had led the judiciary to confine clauses such as §1252(a)(2)(B)(ii) to the least scope they had to have. Judges were concerned that an elimination of all review would permit the agency to violate statutes and the Constitution at will. The enactment of §1252(a)(2)(D) eliminates that reason for giving §1252(a)(2)(B) a narrow reading—and, as the other arguments advanced in *Singh* also have been overtaken by events, we conclude that *Singh* must be overruled to the extent it holds §1252(a)(2)(B)(ii) inapplicable to discretionary reopening decisions. This opinion has been circulated under Circuit Rule 40(e) to all active judges. A majority did not favor a hearing en banc. (Judges Flaum, Ripple, Rovner, Wood, and Williams voted in favor of a hearing en banc.)

What remains is the question whether Kucana has advanced any "constitutional claims or questions of law". His brief does not phrase his contentions in those terms; the entire argument is that the Board abused its discretion. And although the ninth circuit might deem such an argument a proposition "of law" (because the law requires the Board *not* to abuse its discretion), see *Ramadan v. Gonzales*, 479 F.3d 646 (9th Cir. 2007), rehearing en banc denied, 504 F.3d 973 (9th Cir. 2007) (O'Scannlain, J., and eight other judges dissenting), we explained in *Jiménez Viracacha* why *Ramadan* misreads §1252(a)(2)(D).

Kucana offers a second argument in support of reopening: After 2002 his mother (who has become a citizen of the United States) filed on his behalf an application for a visa as an immediate relative. The Board did not mention this when declining to reopen his case. Although the Board does not have any obligation to write an opinion

explaining each decision not to reopen, it does have an obligation to consider every argument made to it. Sometimes an opinion addressing one subject (such as asylum) while not mentioning another (such as an immediate-relative visa) may imply that the latter has been overlooked rather than decided. And we may assume for the sake of argument that ignoring a potentially dispositive issue is an error of law that would allow review under §1252(a)(2)(D). The Board must exercise discretion; only when it has done so is its decision sheltered by §1252(a)(2)(B)(ii).

This does not help Kucana, however, because he did not present to the Board any argument that his mother's application justifies reopening to give him an opportunity to apply for adjustment of status. He attached the I-130 immediate-relative form to his motion before the immigration judge but did not make any argument based on that visa application. Kucana's appeal to the Board did not address this subject; all of his papers dealt exclusively with his contention that conditions in Albania have changed. So it is no surprise that the Board's opinion did not address this subject; an agency need not respond to potential arguments lurking in the record but never advanced by counsel.

The petition for review is dismissed for lack of jurisdiction.

RIPPLE, *Circuit Judge*, concurring, dubitante. I agree with the principal opinion that our disposition of the present

case appears to be controlled by our holding in *Ali v. Gonzales*, 502 F.3d 659 (7th Cir. 2007). *Ali* held that the jurisdictional bar contained in 8 U.S.C. § 1252(a)(2)(B)(ii) "applie[d] to discretionary decisions under regulations that are based on and implement the Immigration and Nationality Act." *Kucana*, slip op. at 3. The principal opinion further explains that

> [t]he discretionary decision in *Ali* was whether to grant an alien's request for a continuance of a hearing; here the discretionary decision is whether to reopen the proceeding and hold a new hearing. Regulations specify that both decisions are discretionary; both regulations draw their force from provisions in the Act allowing immigration officials to govern their own proceedings. It follows that they are equally subject to § 1252(a)(2)(B)(ii).

*Id.* (internal citations omitted). *Ali*, therefore, operates as a *de facto* overruling of our decision in *Singh v. Gonzales*, 404 F.3d 1024, 1026-27 (7th Cir. 2005),[1] which held that § 1252 was not a bar to our review of motions to reopen because the "authority for motions to reopen derived solely from the regulations." *Singh* also noted that the statute was devoid of "any specific language entrusting the decision on a motion to reopen to 'the discretion of the Attorney General.'" *Id.*

Although I believe that we are bound by the holding in *Ali* and that the principal opinion represents a logical extension of that holding, I write separately because I continue to be concerned by the breadth of *Ali*'s holding.

---

[1] *Ali* was circulated to the entire court pursuant to Circuit Rule 40(e).

In *Ali*, we addressed our authority to hear appeals from the denial of a motion to continue—an interim decision, discretionary in nature, which "derives from 8 U.S.C. § 1229a," which, in turn, "confers upon immigration judges the plenary authority to conduct removal proceedings." 502 F.3d at 660. We further observed that "[t]he regulation regarding continuances simply implements the immigration judge's statutory authority to control the course of removal proceedings." *Id.* Here, however, the rationale of *Ali* is being applied beyond the realm of procedural rulings; it is being used to deny aliens review of substantive decisions of the Board of Immigration Appeals that are based on a mistake or misunderstanding of the factual basis of the claim—decisions that the Supreme Court has analogized to motions under Federal Rule of Civil Procedure 60(b). *See Stone v. INS*, 514 U.S. 386, 405 (1995). Furthermore, although the present case involves only a motion to reopen, *Ali*'s rationale would appear to apply equally to motions to reconsider—the basis for which must be a mistake or misapprehension of law. *See* 8 C.F.R. 1003.2. In short, the rationale of *Ali*, taken to its logical conclusion, deprives this court of jurisdiction to review the BIA's mistakes of fact and law made during the course of deciding whether an alien should be removed from this Country.

Although the result today appears to be dictated by circuit precedent, I respectfully suggest that, had Congress intended to deprive this court of jurisdiction of specific substantive decisions, it would have done so explicitly, as it did in 8 U.S.C. § 1252(a)(2)(B)(i). As *Ali* spreads its dominion to substantive fields, it is turning this court into a virtual council of revision with respect to settled federal law. Before taking these steps, we

should revisit the holding in *Ali* and determine whether we should chart a course that more closely adheres to the statutory language chosen and enacted by Congress.

CUDAHY, *Circuit Judge*, dissenting. In *Ali v. Gonzales*, 502 F.3d 659 (7th Cir. 2007), we adopted a view, which (as that opinion acknowledged) is in a minority one among the circuits, with respect to our jurisdiction over appeals from denials of continuances. Six of our sister courts had concluded that 8 U.S.C. § 1252(a)(2)(B)(ii) did not preclude federal appellate courts from re-viewing orders denying such motions. Only the Eighth and Tenth Circuits had held that § 1252(a)(2)(B)(ii) pre-cludes federal courts of appeals from reviewing an im-migration judge's denial of a continuance. *Id.* at 664 (citing *Yerkovich v. Ashcroft*, 381 F.3d 990, 993-95 (10th Cir. 2004); *Onyinkwa v. Ashcroft*, 376 F.3d 797, 799 (8th Cir. 2004)). Yet even these courts continue to exercise jurisdiction over motions to reopen. *See Miah v. Mukasey*, 519 F.3d 784, 789 n.1 (8th Cir. 2008); *Thongphilack v. Gonzales*, 506 F.3d 1207, 1209-10 (10th Cir. 2007). The principal opinion would cause us to become a minority within the min-ority, giving the executive branch the authority to insulate its decisions from judicial review where there is no clear indication in the statute that Congress intended to strip us of our jurisdiction. Our isolated posture in this respect may give us pause here.

In approaching the problem presented by the present case, I believe that the first effort should be to reconcile

*Ali* with *Singh v. Gonzales*, 404 F.3d 1024 (7th Cir. 2005) since the policies underlying stare decisis suggest the preferability of reconciliation of precedent to its rejection in whole or in part. *McClain v. Retail Food Employers Joint Pension Plan,* 413 F.3d 582, 586 (7th Cir. 2005). And I believe that these two precedents may be comfortably reconciled.

In *Singh*, we held that the lack of "specific language entrusting the decision on a motion to reopen to 'the discretion of the Attorney General'" meant that the court had jurisdiction to review the BIA's decision on a motion to reopen. *Singh*, 404 F.3d at 1026-27 (quoting 8 U.S.C. § 1252(a)(2)(B)(ii)). In *Ali*, the petitioner appealed an immigration judge's denial of his motion for a continuance. We found that although continuances were mentioned only in immigration regulations and not in a statute, an immigration judge's authority to grant a continuance derives from a statute. *Ali*, 502 F.3d at 663 (citing 8 U.S.C. § 1229a(a)(1) & (b)(1)). We reasoned that

> the immigration judge's *authority* to conduct and control the course of removal proceedings is "specified in" subchapter II of the INA, and this necessarily encompasses the discretion to continue the proceedings, whether on the motion of a party or sua sponte. The jurisdictional bar therefore applies to continuance decisions.

*Id*. (emphasis in original).

I do not think *Singh* and *Ali* are necessarily incompatible. 8 U.S.C. § 1229a(b) makes clear that the immigration judge has plenary power over the conduct of removal proceedings and gives examples of the kinds of discretion-

ary acts the judge may perform in the course of the proceedings. In contrast, § 1229a(c)(7), the section governing motions to reopen, says nothing at all about the agency's authority to decide motions to reopen. Rather, it simply lays out the requirements an alien must fulfill when filing a motion to reopen.

Ultimately, the principal opinion rests its rejection of *Singh* upon the focus of the Real ID Act upon judicial reviewability of "constitutional claims or questions of law." According to the principal opinion this eliminates the need for a narrow reading of jurisdiction-stripping provisions and meets the judiciary's principal concern in this area. I think this exercise in judicial psychoanalysis must yield to broader principles favoring judicial review of administrative decisions.

There is a "strong presumption that Congress intends judicial review of administrative action." *Traynor v. Turnage*, 485 U.S. 535, 542, 108 S. Ct. 1372, 99 L. Ed.2d 618 (1988) (citation omitted). It is only a presumption, of course, not an ironclad rule, and is overcome where it is clear that Congress intended to strip federal courts of their power to review agency decisions. *Id*. Part of our rationale in *Ali* was based on the fact that Ali was seeking an adjustment of status under 8 U.S.C. § 1255. Section 1252(a)(2)(B)(i) expressly bars us from reviewing such decisions, providing that "no court shall have jurisdiction to review (i) any judgment regarding the granting of relief under section . . . 1255 of this title." A clear Congressional command would have barred our review of the final decision, and statutory language suggested the plenary nature of the IJ's authority over the procedural steps on the way to that unreviewable final decision. Thus, Ali's continuance motion "was a procedural step

along the way to an unreviewable final decision." *Ali*, 502 F.3d at 664.

In contrast, the underlying relief sought in the present case is asylum—a discretionary but reviewable decision—and there is no statutory language suggesting the level of deference to be afforded a denial of a motion to reopen. As the concurrence points out, the rationale of the principal opinion would bar our review of motions to reconsider, which are based on errors of law and fact. Absent " 'specific language or specific legislative history that is a reliable indicator of congressional intent,' or a specific congressional intent to preclude judicial review that is 'fairly discernible in the detail of the legislative scheme,' " *Traynor*, 485 U.S. at 542, 108 S. Ct. 1372 (quoting *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 673, 106 S. Ct. 2133, 90 L. Ed.2d 623 (1986)), I am reluctant to broaden the immunity from review of an administrative process not necessarily renowned for its reliability.

RIPPLE, *Circuit Judge*, with whom ROVNER, WOOD and WILLIAMS, *Circuit Judges*, join, dissenting from the denial of a rehearing en banc. This case presents an important issue with respect to the scope of this court's holding in *Ali v. Gonzales*, 502 F.3d 659 (7th Cir. 2007). In *Ali*, we addressed our authority to hear appeals from the denial of a motion to continue—an interim decision that is discretionary in nature. 502 F.3d at 660. Here, however, the rationale of *Ali* is being applied beyond the realm of

such a procedural ruling; it is being used to deny aliens review of a motion to reopen, a decision of the Board of Immigration Appeals that is based on a mistake or misunderstanding of the factual basis of the claim. This expansion into the realm of outcome determinative decisions takes us a long way from the statutory language chosen and enacted by Congress. *See* 8 U.S.C. § 1252(a)(2)(B)(i).

Applying *Ali* to deny aliens review of the decision whether to reopen crystalizes the importance of revisiting the breadth of that holding: The Supreme Court has analogized motions to reopen to motions under the Federal Rule of Civil Procedure 60(b), *see Stone v. INS*, 514 U.S. 386, 405 (1995). Indeed, since the panel's consideration of this case, the Supreme Court has characterized motions to reopen as an "important safeguard" designed to "ensure a proper and lawful disposition." *Dada v. Mukasey*, No. 06-1181, ___ S. Ct. ___, 2008 WL 2404066 at *15, 16 (June 16, 2008). This new holding of the Supreme Court should make us pause, take a deep breath and consider anew whether we really want to take the Circuit down a path so contrary to the manifest intent of Congress and to the Supreme Court's understanding of that intent. If we take such a course, our decision will no doubt warrant close scrutiny by the Supreme Court. *See* Sup. Ct. R. 10.