In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 07-3396 & 08-1452

JESUS LAGUNAS-SALGADO,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petitions for Review of an Order of
the Board of Immigration Appeals.
No. A90 712 401

ARGUED APRIL 17, 2009—DECIDED OCTOBER 13, 2009

Before FLAUM, EVANS, and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. The Board of Immigration
Appeals and this court have long considered crimes with
fraud as an element to be crimes involving moral turpi-
tude. Jesus Lagunas-Salgado was convicted of fraud
in connection with identification documents, but he
maintains his crime was not one of moral turpitude
because he did not defraud the customers who bought
false documents from him (they knew they were getting

false documents, after all), he made the false Social Security and alien registration cards so that others could find employment, and he was not convicted of presenting the fake papers for use himself. No matter his motives, Lagunas-Salgado still engaged in a crime that involves inherently deceptive conduct as he was convicted of selling fraudulent official documents to other persons. The BIA therefore reasonably determined that he had been convicted of a crime of moral turpitude. We also find no merit in the other challenges he raises, so we deny the petition for review.

## I. BACKGROUND

Jesus Lagunas-Salgado, a Mexican native and citizen, first entered the United States in 1977. He received United States permanent resident status in 1990. He and his wife, also a lawful permanent resident, have three children. Ten years after receiving permanent resident status, Lagunas-Salgado was convicted in federal court of fraud in connection with identification documents in violation of 18 U.S.C. § 1028(a)(2). He received a sentence of five months' imprisonment and two years' probation. In 2003, three years after his conviction, Lagunas-Salgado took a trip to Mexico, and, when he returned, presented himself for inspection to the United States Department of Homeland Security. Early the next year, DHS initiated removal proceedings against him by filing a Notice to Appear that charged he was inadmissible as an alien convicted of a crime of moral turpitude.

At a hearing before an immigration judge in December 2005, Lagunas-Salgado denied that he was inadmissible.

DHS then introduced a certified copy of the criminal complaint, judgment of conviction, and waiver of indictment related to his conviction for fraud in connection with identification documents. When Lagunas-Salgado's counsel said he had not had an opportunity to review the documents, the immigration judge continued the case until the afternoon session. At that session, Lagunas-Salgado's counsel objected to the introduction of the documents on the ground that he had not had ten days to examine them, as he contended local court rules required, and also because he had not had an opportunity to question the DHS agent whose affidavit supported the criminal complaint. The immigration judge admitted the documents after concluding they were certified documents of a United States district court, they were necessary to determine removability, and that Lagunas-Salgado had not provided any basis to question the truthfulness of the documents. The judge then concluded the documents were sufficient to establish that Lagunas-Salgado had been convicted of a crime involving moral turpitude.

Lagunas-Salgado expressed an intent to apply for a waiver of inadmissibility and cancellation of removal, and the judge set deadlines and scheduled a hearing for February 1, 2006. At the hearing, Lagunas-Salgado asked for a continuance because his fingerprint check results had not yet returned. The judge declined, saying a final ruling could be postponed pending those results if he were inclined to grant relief.

A merits hearing then took place. Lagunas-Salgado testified that he had been convicted in 2000 after he

sold fraudulent alien registration cards ("green cards") and Social Security cards. He testified that his brother made false documents in Lagunas-Salgado's basement before his brother's death in October 1996. Then, Lagunas-Salgado explained: "After my brother died, he left some stuff in there. So I just went through because people will come to look for him to make some of the false papers. So I start doing it, but not for the money, more to help the people—to help people." On cross examination, he acknowledged that while sometimes he did not charge for the papers, he at other times charged anywhere from $20 to $100 for the false documents. He also acknowledged that he had made documents for approximately 50 people before his arrest. He testified that he now realized what he had done was wrong and that he would not do it again.

Several of Lagunas-Salgado's family members also testified at the hearing. His wife, two of his sons, and the girlfriend of a third son testified that he was a good person who played a critical role in supporting his family, including the children of a son who had been deported to Mexico.

The immigration judge found Lagunas-Salgado removable as charged and denied his requests for cancellation of removal and waiver of inadmissibility. The judge concluded that the factors in Lagunas-Salgado's favor, including his employment history, family ties, and length of permanent residence, did not outweigh the length of time he had been involved in criminal activity and the number of documents he had fraudulently produced and sold. With respect to the waiver request, the judge ruled

that Lagunas-Salgado had not established that his removal would result in extreme hardship to a United States citizen or lawful permanent resident spouse, parent, or child.

Lagunas-Salgado appealed to the BIA. The BIA rejected his arguments, including his argument that his conviction for fraud with identification documents was not a crime involving moral turpitude. The BIA also denied his subsequent motion for reconsideration. Lagunas-Salgado now petitions our court for review.

## II.  ANALYSIS

### A.  Crime Involving Moral Turpitude

Lagunas-Salgado's primary challenge is to the determination that his prior conviction was one "involving moral turpitude." A conviction for a crime involving moral turpitude with a maximum penalty exceeding one year's imprisonment renders an alien inadmissible under 8 U.S.C. § 1182(a)(2)(A). Whether an alien's conviction is properly classified as a crime of moral turpitude is a question of law, so we may review it. 8 U.S.C. § 1252(a)(2)(D); *Ali v. Mukasey*, 521 F.3d 737, 739 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2853 (2009).

The United States Code does not define "moral turpitude." And although several Justices on the Supreme Court thought the phrase unconstitutionally vague, the Court nonetheless rejected a vagueness challenge to the term. *Jordan v. DeGeorge*, 341 U.S. 223 (1951). So we do the

same to Lagunas-Salgado's vagueness challenge to the statute here, as we have on similar occasions in the past. *See, e.g., Garcia-Meza v. Mukasey*, 516 F.3d 535, 536 (7th Cir. 2008).

The BIA has described a crime of moral turpitude as including "conduct that shocks the public conscience as being 'inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.'" *In re Solon*, 24 I. & N. Dec. 239, 240 (BIA 2007) (quoting *Matter of Ajami*, 22 I. & N. Dec. 949, 950 (BIA 1999)). The inquiry is a question "of the offender's evil intent or corruption of the mind." *Matter of Serna*, 20 I. & N. Dec. 579, 581 (BIA 1992). Under that standard, the BIA has concluded that petty larceny and issuing a worthless check involve moral turpitude. *Id.* at 582 (collecting cases). On the other hand, crimes such as importing, selling, or possessing drugs do not involve moral turpitude because evil intent is not an element of the offense. *Id*.; *see also Garcia-Meza*, 516 F.3d at 538 (aggravated battery of a police officer under Illinois law not necessarily a crime involving moral turpitude). We have described the inquiry as one into whether the act is "ethically wrong without any need for legal prohibition (acts wrong in themselves, or *malum in se*)" or only "ethically neutral and forbidden only by positive enactment (acts wrong because they are so decreed, or *malum prohibitum*)." *Ali*, 521 F.3d at 740.

Although whether a crime is one involving moral turpitude is a question of law, that does not mean our review in this case is de novo. In *Chevron U.S.A., Inc. v.*

*Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Supreme Court held that when a court reviews an agency's construction of a statute it administers and Congress has not directly spoken on the precise question at issue, the proper question for the court to ask is whether the agency's answer is based on a permissible construction of the statute. 467 U.S. at 843. We held last year that a formally adjudicated BIA determination that a conviction was for a crime of moral turpitude is entitled to *Chevron* deference. *Ali*, 521 F.3d at 739. Even though only a single member of the BIA decided Lagunas-Salgado's appeal, *Ali* instructs that the decision is still entitled to deference if it was based on BIA precedent from multi-member panels. *Ali*, 521 F.3d at 739.

It was. The statute governing Lagunas-Salgado's conviction, 18 U.S.C. § 1028 (2000), was entitled "Fraud and related activity in connection with identification documents and information." Subsection (a)(2), to which he pled, made it a crime when a person "knowingly transfers an identification document or a false identification document knowing that such document was stolen or produced without lawful authority."[1]

The BIA concluded that Lagunas-Salgado's conviction for violating 18 U.S.C. § 1028(a)(2) was one involving

---

[1] The statute has since been amended to include a prohibition on the knowing transfer of an "authentication feature" when a person knows the feature was stolen or produced without lawful authority. Secure Authentication Feature and Enhanced Identification Defense Act of 2003, Pub. L. 108-21, 117 Stat. 650, 689.

moral turpitude because it inherently involved fraud and because it impeded the efficiency of the government by deceit and dishonesty. The BIA has long considered fraud a crime of moral turpitude. *See Ali*, 521 F.3d at 740 (collecting cases); *Matter of Kochlani*, 24 I. & N. Dec. 128, 130-31 (BIA 2007) (trafficking in counterfeit goods or services is a crime involving moral turpitude); *Matter of Flores*, 17 I. & N. Dec. 225, 230 (BIA 1980) (uttering and selling false or counterfeit paper related to the registry of aliens was a crime involving moral turpitude, even though intent to defraud was not an explicit statutory element). Cases such as these led us to call it "settled" that crimes with fraud as an element involve moral turpitude. *Ghani v. Holder*, 557 F.3d 836, 840 (7th Cir. 2009) (quoting *Padilla v. Gonzales*, 397 F.3d 1016, 1020 (7th Cir. 2005)).

Attempting to put his case outside this strong precedent, Lagunas-Salgado contends that his crime does not fall within the "fraud" umbrella for several reasons. He emphasizes that he was not convicted of intending to deceive the government, but rather only of transferring the documents to other individuals. He points us to the BIA's opinion in *Matter of Serna*, 20 I. & N. Dec. 579 (BIA 1992), where the BIA held that a conviction merely for *possession* of an altered immigration document with knowledge that it was altered was not a conviction for a crime involving moral turpitude. The BIA reasoned that the crime there contained no requirement or proof that a document was used or was intended to be used in an unlawful manner. Distinguishing the case before it from those finding that possession of certain stolen goods involved moral turpitude, the BIA wrote:

> It is inherently wrong to deprive another person of his property by theft. Therefore, it is also wrong to perpetuate the harm already inflicted by continuing to possess goods which are known or should be known to be stolen. However, in the case of an altered document, the Government has not been harmed until a person actually uses it or intends to use it for fraudulent or deceitful purposes.

*Serna*, 20 I. & N. Dec. at 585 n.10 (internal citations omitted).

The BIA reasonably concluded in *Serna* that there may be circumstances when a person possesses an altered immigration document without the intent to use it unlawfully. Lagunas-Salgado, however, was not convicted of merely possessing a false document. Rather, he pled guilty to *knowingly transferring* false documents. In resolving Lagunas-Salgado's appeal, the BIA turned to its decision in *Flores*, where it held that the crime of uttering and selling false or counterfeit paper related to registry of aliens in violation of 18 U.S.C. § 1426(b) was a crime of moral turpitude. Although the statute did not expressly include intent to defraud as an element of the offense, the BIA said that selling false papers related to the registry of aliens with knowledge that they were false "inherently involves a deliberate deception of the government and an impairment of its lawful functions." *Flores*, 17 I. & N. Dec. at 230.

In Lagunas-Salgado's case, the BIA was justified when it relied on *Flores* to conclude that Lagunas-Salgado's conviction was for a crime involving moral turpitude. He

sold falsified alien registration papers, and his crime required the government to prove that he knew of the documents' fraudulent nature and that he made the transfers knowingly. The BIA therefore had reason to find that his crime inherently involved deception, even if it did not require that he present any documents directly to the government.

Going beyond the elements of the crime, Lagunas-Salgado also argues that his actions were not inherently base, vile, or depraved because he was only transferring documents so that persons could obtain employment to feed their families. While we recognize this may have been part of his motivation, this argument undermines his contention that he was not deceiving the government, as it recognizes that he knew the persons receiving the false documents would use them in an attempt to obtain work that they could not otherwise lawfully obtain. This is also not a case of a person acting solely out of the goodness of his heart. Lagunas-Salgado was not giving out all the false documents for free. Rather, he acknowledged that he often charged for the documents, sometimes up to $100.

Lagunas-Salgado also contends that his case should not fall under the fraud line of cases because he was not defrauding the people to whom he sold the documents. The recipients knew they were getting fraudulent documents, so he says he was not deceiving them at all. That the recipients themselves were not deceived does not change the fact that Lagunas-Salgado was selling fraudulent Social Security cards and alien registration cards and

placing them out into the world. The BIA reasonably concluded that knowingly selling false official identification documents involves inherently deceptive conduct and is, therefore, a crime involving moral turpitude.

### B.   Other Arguments Fail for Lack of Prejudice

Lagunas-Salgado's other arguments fare no better. Although he raises due process arguments, he does not have the requisite liberty interest to succeed on these claims. *See Cevilla v. Gonzales*, 446 F.3d 658, 662 (7th Cir. 2006). That is because the relief Lagunas-Salgado sought—cancellation of removal and a waiver of inadmissibility—was purely discretionary. *See id*. That said, we have recognized that there are statutory and regulatory protections designed to ensure that aliens receive fair hearings in proceedings, including the right to present material evidence at impartial hearings. *See, e.g., Pronsivakulchai v. Gonzales*, 461 F.3d 903, 907 (7th Cir. 2006); *see also* 8 U.S.C. § 1229a(b)(4); 8 C.F.R. § 1240.1(c).

In any event, the arguments Lagunas-Salgado raises do not entitle him to any relief. He maintains that he should have received a continuance so that his counsel could have ten days to review his conviction documents, as he says local practice required. (The government does not agree). But he has not demonstrated any prejudice from having less than ten days to review the documents. *See Rehman v. Gonzales*, 441 F.3d 506, 509 (7th Cir. 2006) ("[C]ourts do not set aside agencies' decisions unless mistakes cause prejudice"). The immigration judge set Lagunas-Salgado's case over until the afternoon so that

counsel could review the documents, and he has never presented any evidence that the certified copy of the conviction and accompanying documents did not apply to him. Lagunas-Salgado also faults the immigration judge for declining to await fingerprint results before taking evidence in the case. We find no problem with the judge's decision to do so, as he clearly stated that he would continue the case as necessary to grant any relief.

Lagunas-Salgado also points out inaccuracies in the initial BIA opinion. When it decided his motion to reconsider, the BIA acknowledged that it had erroneously stated in its initial decision that Lagunas-Salgado had been convicted of four counts of the offense in 2000 rather than one count. It then explained that this error did not affect its determination, as he still stood convicted of a crime involving moral turpitude. The factual error in the BIA's initial decision therefore did not prejudice him.

Finally, Lagunas-Salgado argues that his removal violated the Eighth Amendment's excessive fine clause. We decline to revisit our conclusion in *Zamora-Mallari v. Mukasey*, 514 F.3d 679, 695 (7th Cir. 2008), that a removal is not an "excessive fine" within the meaning of the Eighth Amendment, and we accordingly find no Eighth Amendment violation here.

### C. Denial of Motion to Reopen Not Unconstitutional

After oral argument, Lagunas-Salgado filed a motion asking us to order a remand to the BIA for it to address

the impact that current conditions in Mexico have on his requests for cancellation of removal and a waiver of inadmissibility. He filed this motion after the BIA had denied his motion to reopen his proceedings on the same grounds. We held in *Kucana v. Mukasey*, 533 F.3d 534 (7th Cir. 2008), *cert. granted*, 129 S. Ct. 2075 (2009), that we lack jurisdiction to consider the discretionary denial of a motion to reopen. Perhaps attempting to take his case out of the reach of *Kucana*, Lagunas-Salgado maintains that the BIA's denial of his motion to reopen violated principles of due process and equal protection because the BIA reopened the case of another Mexican citizen after a motion to reopen based on escalating violence in Mexico had been filed. We find no constitutional violation, however. The BIA denied Lagunas-Salgado's motion to reopen because it was both time- and number-barred and no statutory or regulatory exception applied. The motion to reopen in the case to which Lagunas-Salgado points, in contrast, had been filed in a timely manner. As a result, we deny the request to remand on the basis of current conditions in Mexico.

### III. CONCLUSION

Lagunas-Salgado's petition for review is DENIED.