**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

## For the Seventh Circuit
## Chicago, Illinois 60604

Argued November 17, 2009
Decided November 23, 2009
AMENDED November 25, 2009

### Before

FRANK H. EASTERBROOK, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

Nos. 08-3243 & 09-1280

CHRISTA FAREED BAUER,
　　*Petitioner*,

　　　　*v.*

ERIC H. HOLDER, JR.,
Attorney General of the United States,
　　*Respondent*.

Petitions for Review of Orders of the Board of Immigration Appeals.

### Order

Christa Bauer, a citizen of either Zambia or Zimbabwe, applied for asylum in the United States. (Her passport is from Zambia, and several affidavits presented in support of the application for asylum acknowledge birth in that nation; but in the asylum application itself Bauer asserts that she was born in Harare, Zimbabwe, and is a citizen of that nation.) An immigration judge scheduled a hearing for November 28, 2005. Bauer did not appear. Eleven days before the hearing, she had filed a notice withdrawing the claim for asylum: she had decided instead to pursue a petition for adjustment of status on the basis of marriage. Because Bauer did not appear, she was ordered removed *in absentia*. The IJ also denied her request for asylum; apparently he had not received the notice withdrawing that request. But that decision did not matter, because the removal order rests on the facts that Bauer is neither a citizen of the United States nor the holder of a visa entitling her to be here. And once the order of removal was entered, the agency closed its file on Bauer's request for adjustment of status.

Bauer had 180 days to file a motion to reopen the proceedings, a step that could have allowed the agency to act on the petition for adjustment of status. 8 U.S.C. §1229a(b)(5)(C). She took more time than that. Bauer contends that she did not learn

about the removal order until April 3, 2006. Through legal counsel, she filed a motion to reopen on September 26, or 176 days after she concedes receiving actual notice. (Bauer has given at least four other dates as the receipt of notice; April 3 is the latest, so we use that without considering the consequences of this curious inconsistency.) The statutory 180-day deadline runs from "the date of the order of removal", not from the date the order is received. As of April 3, 2006, Bauer had 54 days left to file a timely motion. She has never explained why she did not file within that period. Instead her lawyer has espoused the view that the time runs from receipt of notice, rather than from the date of the removal order, and that there is therefore no delay in need of explanation. Counsel has never offered any authority for that position, however.

The IJ denied the motion to reopen, for two reasons: first, it was untimely; second Bauer has not established "exceptional circumstances" (the standard for relief on a timely motion). Bauer filed an affidavit concerning her decision to skip the hearing. In it she asserted that "I thought the combination of my marriage and the [adjustment-of-status] filing would cancel out any need to appear before the Judge". Bauer did not suggest that the IJ or any of the agency's employees had advised her that she could simply ignore an order to appear for a hearing. The IJ understandably concluded that an alien's decision to ignore an IJ's order to appear is not the sort of circumstance that justifies starting over.

On appeal to the Board of Immigration Appeals, Bauer filed a second affidavit. This time she attributed her decision to advice from Marianna Omazic, an immigration counselor (a non-lawyer assistant accredited by the agency, see 8 C.F.R. §1292.2(d)). Bauer did not supply any written advice to that effect from Omazic, nor did the affidavit (or any other document filed with the BIA) present Omazic's version of any conversations she may have had with Bauer. Neither the affidavit nor any other document stated that Bauer had lodged a complaint with the agency, which has the authority to remove Omazic from the rolls of accredited counselors. See 8 C.F.R. §1292.3. The BIA dismissed Bauer's appeal, ruling that the second affidavit was no better than the first at establishing exceptional circumstances. The Board thought that, by parallel to *Matter of Lozada*, 19 I&N Dec. 637 (1988), Bauer had to confront Omazic with the allegation that unprofessional advice had been rendered, obtain (and include in the record) a response to that accusation, and file a formal charge of misconduct with the regulatory body. None of these steps had been taken. Bauer then filed a motion to reconsider, which the BIA denied. We have consolidated Bauer's petitions for review of the motions to reopen and reconsider.

We held in *Kucana v. Mukasey*, 533 F.3d 534 (2008), cert. granted, 129 S. Ct. 2075 (2009), that 8 U.S.C. §1252(a)(2)(B)(ii) precludes jurisdiction over petitions to review orders denying motions to reopen, unless (as §1252(a)(2)(D) provides) the alien presents a statutory or constitutional argument. Bauer contends that she has a constitutional argument: that bad advice from a non-lawyer counselor means that the IJ's order violates the due process clause of the fifth amendment. But we are not reviewing the removal order entered in November 2005. The orders at issue are those entered by the BIA in 2008 (denying reopening) and 2009 (denying reconsideration of the 2008 decision). Bauer does not present any constitutional objections to *those* orders.

Whether the petition to reopen was timely, whether that time should be equitably tolled (as Bauer argued before the BIA), and whether "exceptional circumstances" support reopening are non-constitutional issues. Bauer does not contend that the Board made an error of law; instead she contends that the IJ and the BIA abused their discretion by not accepting her untimely motion and not deeming the circumstances "exceptional." Those are the very sort of discretionary decisions on which §1252(a)(2)(B)(ii)

makes the administrative decision final. See, e.g., *Huang v. Mukasey*, 534 F.3d 618, 622–23 (7th Cir. 2008). See also, e.g., *Stroe v. INS*, 256 F.3d 498 (7th Cir. 2001) (because there is no right to appointed counsel at public expense in removal proceedings, bad legal advice is not a constitutional problem but, as in other civil litigation, is imputed to the client); *Magala v. Gonzales*, 434 F.3d 523 (7th Cir. 2005).

*Kucana* holds that decisions not to reopen are covered by §1252(a)(2)(B)(ii) (subject to the proviso for statutory and constitutional arguments), because it reads the reference to "discretion" in §1252(a)(2)(B)(ii) to include not only discretion specified *in* the Immigration and Naturalization Act, but also discretion exercised *under* that Act. Regulations under the Act make reopening discretionary. The other possible understanding of §1252(a)(2)(B)(ii), advanced by the alien in *Kucana*, limits that statute to discretion conferred by the statutory text. If the Supreme Court should agree with that argument, then we would have jurisdiction. But Bauer still could not prevail, for §1229a(b)(5)(C) provides that an order of removal may be rescinded

> only—
>
> (i) upon a motion to reopen filed within 180 days after the date of the order of removal if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1) of this section), or
>
> (ii) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title or the alien demonstrates that the alien was in Federal or State custody and the failure to appear was through no fault of the alien.

Bauer cannot use subsection (i), because her motion was filed more than 180 days after the order of removal. And subsection (ii) does not apply by its terms: Bauer does not contend that she did not receive notice of the hearing, or that she was in custody at the time of the hearing.

And even if all of this is mistaken, substantial evidence supports the Board's decision that Bauer has not demonstrated "that the failure to appear was because of exceptional circumstances (as defined in subsection (e)(1) of this section)". Subsection (e)(1) reads: "The term 'exceptional circumstances' refers to exceptional circumstances (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien." Nothing "beyond the control" of Bauer took place, nor is mistaken legal advice comparable to extreme cruelty or serious illness. Cf. *Murray v. Carrier*, 477 U.S. 478 (1986) (when there is no right to counsel at public expense, a lawyer's incompetence is not the sort of external impediment that could excuse a procedural default). Bauer may or may not have received bad advice (her own affidavits don't agree on that point), but she could and should have notified the IJ and asked him to postpone or cancel the hearing. And she could have alerted Omazic to her current allegations, obtained Omazic's response, and filed a formal complaint. See *Omar v. Mukasey*, 517 F.3d 647, 651 (2d Cir. 2008) (the BIA is entitled to apply the *Lozada* procedure to complaints about the advice furnished by non-lawyers). The BIA did not abuse its discretion in denying Bauer's motion.

The petitions for review are dismissed for want of jurisdiction on the authority of *Kucana*; but in an exercise of caution, given the grant of certiorari in *Kucana*, we alternatively deny the petitions on the merits.